### CITY OF WINSTON v. CITY OF SALEM.

(Filed December 2, 1902.)

TAXATION—*Personal Property—Situs Corporations—Partnerships —Acts 1899, Chap. 15, Sec. 14—Acts 1891, Chap. 40, Sec. 41; Chap. 307, Sec. 50—Constitution, Art. 7, Sec. 9.*

> Where a corporation or partnership has its place of business in one town with part of its personal property stored in another town, such property is only taxable in the town where its place of business is located.

COOK, J., dissenting.

ACTION by the City of Winston against the City of Salem, heard by Judge *Thos. J. Shaw,* at September Term, 1902, of the Superior Court of FORSYTH County. From a judgment for the plaintiff, the defendant appealed.

*A. H. Eller,* for the plaintiff.
*Watson, Buxton & Watson,* for the defendant.

CLARK, J. The Reynolds Tobacco Company (a corporation) and Hanes & Co. (a partnership), are tobacco manufacturers, each having its principal office and factory building in Winston, and each using warehouses just across the street in Salem (the towns being divided only by a street), in which they temporarily store leaf tobacco, as bought from time to time, until it is removed to the factory in Winston for manufacture. The question is, whether the leaf tobacco thus stored on 1 June, 1900, was taxable in Winston or Salem. The said parties have paid the taxes thereon in Winston, under an agreement that said taxes will be paid over by said city to the town of Salem if the Courts shall adjudge that the latter is entitled to the same.

If this action is properly constituted in Court, which we

do not wish to be understood as deciding, for no recovery is asked by the plaintiff, who has the fund in possession, the question is settled in favor of the power of taxation of said tobacco by the city of Winston by the very terms of the statute then in force.    Laws 1899, Chap. 15.    Section 14 thereof provides that "All personal property, except such shares of capital stock and other property as are directed to be listed otherwise in this act, shall be listed in the township in which the person so charged resides on the 1st day of June.    The residence of a corporation, partnership or joint stock association shall be deemed to be in the township in which its principal office or place of business is situated."

The Constitution, Art. VII, Sec. 9, requires that "All taxes levied by any county, city, town or township shall be uniform and *ad valorem* upon all property *in the same.*"    The towns of Winston and Salem are in the same township, and the charters of both, in conformity to the above constitutional provision, grant them power to levy and collect taxes upon "all real and personal property within its corporate limits." Private Laws 1891, Chap. 40, Sec. 41 (1), and Chap. 307, Sec. 50.

As to the *situs* of realty, there can be no doubt, but the *situs* of personalty for purposes of taxation, from time immemorial has been a matter for the law-making power, which has provided different rules for different kinds of personalty, and has changed them from time to time.    There is nothing in the above cited section of the Constitution which indicates an intention to restrict legislation as to the *situs* of personal property (which, at common law, always followed the person, hence its designation), and no decision has so construed that section.    It seems to us that sound public policy requires that the Legislature be left free, as always heretofore, to prescribe regulations as to the *situs* of personal property, and, unless the constitutional provision were plain and explicit to

the contrary, we can not hold the statute to be unconstitutional.

As the above cited section (section 14, chapter 15, Laws 1899) located the *situs* of this property (which is not "property directed to be otherwise listed in the act") in the place where the corporation or partnership has "its principal office or place of business," it follows that by the terms of the respective charters this tobacco was taxable in the town of Winston. This is the general rule. "Where a corporation had its place of business in one town, with a part of the personal property stored in another town, such property is only taxable in the town where its place of business is located." *Ferry Co. v. Middletown*, 40 Conn., 65; *Railroad v. Alexandria*, 17 Gratt. (Va.), 176. See also Note 5, page 186, Burroughs on Taxation, with a large number of cases cited, holding the same doctrine.

Error.

FURCHES, C. J., concurring. I concur in the opinion of the Court, because I believe it states the law as it is written, and not because I think the law is right. If I considered that I had the power to do so, I would change it, and agree with the dissenting opinion of my brother Cook. But personal property is supposed to attend the person of the owner, and, upon that idea, is taxable where the owner resides, and, in most cases, this is proper and convenient; as where a tax payer has small amounts of personal property in different townships or in different counties, it would be inconvenient for him to list such property in the township or county where it happened to be on the 1st day of June. And the uniform rule has been to list personal property for taxation in the county, township or town where the owner resides. While this is the rule under this presumption, that such property attends the person of the owner, it has for a long time, if not

always, been held that this presumption (or fiction, as it is sometimes called) is subject to be changed by legislative enactment, as has been done by providing that guardians should list their ward's estate in the township where the ward resides, and by providing that stock on a farm should be listed where the farm is listed. But none of these legislative acts provide for the case at bar. It is governed by the general law, that personal property must be listed in the town or township where the owner resides. Indeed, it seems to me that the Legislature, in making the exceptions it has, construed the general act to be that it must be listed where the owner resides, in all cases not so excepted from the general rule, under the doctrine of *expressio unius est exclusio alterius.* And while I think it is the law as now written, to my mind, it may work great hardship and wrong. As I understand the law as it is now, a man may own or have rented a store house in town, in which he has $50,000 worth of goods, which receive the protection of the town government under its police authority, and the benefits of the town trade; and yet, if he happens to live outside of the corporate limits, his $50,000 worth of property escapes the payment of one cent of taxes to support the town government. This, I think, should be remedied, but I can not do it. It seems to me that the Legislature might do it by providing that property in, or connected with the *use of a house,* should be listed for taxation where the house is listed, as it is provided that stock on a farm shall be listed where the farm is listed.

DOUGLAS, J., *dubitante.* I am very much impressed with the strength and consistency of the reasoning in the dissenting opinion of Justice Cook. If it is not the law, it should be the law. Suppose that a man should have a large warehouse or factory in the city of Winston, where he was actively engaged in the regular transaction of his business, and where he kept

stored large amounts of tobacco, he would not be liable for any municipal tax whatever, except, perhaps, a license tax, if he happened to live a few feet beyond the corporate limits. The fact that he lived in another city would make no difference in the principle. A cotton broker in Raleigh, similarly situated, would be equally exempt. He would have all the benefits of a city, with practically none of its burdens. He would have all its facilities for transacting business, buying, selling, shipping and banking, with police and fire protection, for the price of his license. If he had a thousand bales of cotton stored in the city, every bale would, in contemplation of law, be located at his home. It can hardly be said that such a system of taxation results in the practical uniformity contemplated by the Constitution, whatever may be its theoretical nature. And yet it may be that the *situs* of personal property is within the control of the Legislature. If so, we must await legislative action.

COOK, J., dissenting. By section 14, chapter 15, Laws 1899, cited and sustained in the opinion of the Court, the Legislature undertakes to fix the *situs* of personal property (that which is tangible, substantial and valuable by reason of its *corpus*) for taxation in the *township* in which the owner *resides*, or where the corporation, partnership or joint stock association has its *principal office* or *place of business*. So that in this view, a person owning personal property of *very great* value situate and in use in a township or city, which may be in debt and required to levy taxes to meet its obligations, might move his residence out of *that* township or city into a township or city which *owed* no *debt*, and thus escape taxation therein, and yet receive all the benefits and protection enuring and resulting from such township or city indebtedness; so, likewise could a corporation, partnership or joint stock association obtain a like advantage by the removal or

location of the *principal* office or principal place of business. If this be so, then the non-residents of the township or city would receive equal benefit and protection with the residents and pay nothing for it, leaving the burden of paying for the same upon the residents, based upon the fancied idea that the personal property follows the person. To my mind, it is clear that this fiction was exploded, and so intended, by our Constitution, in ordaining that all taxes levied   *   *   * shall be uniform and *ad valorem* upon *all* the property in the same—in the county, city, town or township where it may abide, remain, be kept or placed by the owner, to the end that each article of value should *there* bear its proportionate part of the burden of taxation in consideration of the advantages, benefits and protection which it *there* has and enjoys.

Plaintiff and defendant are two separate and distinct municipalities, situated in the same (Winston) township, in Forsyth County, existing under separate charters. They adjoin each other, and are separated by a street (First street), which runs east and west, and which is owned and maintained by plaintiff.

The R. J. Reynolds Tobacco Company, a corporation having its principal office and factory building in Winston, and P. H. Hanes & Company, a co-partnership, the several members of which reside in Winston, and also having its principal office and factory situate therein, are engaged in the manufacture of plug tobacco, and in buying, storing and preparing leaf tobacco for manufacture. On June 1, 1900, and for several years prior thereto, they had in buildings, leased for a term of years for such purpose, leaf tobacco kept therein for storage, until ready to be removed to the factories in Winston for manufacture. As both of the owners of the leaf tobacco, so kept for storage in Salem, have their principal offices and factories in Winston, and the individual members of the co-partnership reside therein, plaintiff claimed that the tobacco

so stored and kept in Salem was a subject of taxation for municipal purposes by it, and listed the same for taxation, and insist that the taxes are due to it; while the defendant claims that said 'leaf tobacco being kept and stored within its corporate limits, was liable to taxation by it, and accordingly listed the same for taxation for its municipal purposes, and claims the taxes due thereon.

So the question presented in this appeal is, Do the taxes assessed upon the leaf tobacco so stored and so kept in Salem, belong to plaintiff under its assessment, because the owners reside in and have their principal office and factory in Winston? Or, to state it in a different way, should the tobacco so stored and kept in Salem be listed for taxation for municipal purposes by the city of Winston, where the owners, corporation and co-partnership, had their principal office, or by Salem, where the property was stored and kept until ready and needed for use at the factory?

As all personal property is movable, it can not be said to be permanently located anywhere; therefore it can not have a fixed or unchangeable abode. While movable at the owner's will, it does not in fact necessarily accompany its owner, but must be and exist where it is placed in the service or use for which he has designed it. Where the same is placed for an indefinite time, awaiting the use for which it is designed, or being used in the service of its owner while there in carrying on his business of a permanent nature, or for an indeterminate period, its presence there must be generally considered to have such an actual *situs* as would draw to it that legal protection for which it should be liable for taxation, if not otherwise prescribed by law.

But the *situs* of property subject to taxation by the county, city, town or township, is expressly fixed by Article VII, Sec. 9 of the Constitution, which requires the levy to be "upon all property in the same," and that it shall be uniform

and *ad valorem.* The section is as follows: "All taxes levied by any county, city, town or township shall be uniform and *ad valorem* upon all property in the same, except property exempted by this Constitution."

So it is necessary to determine what is meant by all property "in the same." When is property "in the same" (city here), within the meaning of that section? This being determined, there can be no question as to the *situs,* as fixed by the Constitution. Real property being permanently located, there can be no question as to its *situs;* but on account of the movability of personal property in its use and service of its owner, there is some difficulty in determining *when* it is "in the same" (county, city, town or township) as a subject of taxation. It is clear that it is not contemplated by the Constitution that it is "in the same" while in transit; otherwise it would be taxable in each and every municipality through which it might pass on the 1st day of June. Nor can it be held that it would be exempt from taxation by the municipality if its usual *situs* or abode if temporarily in its use it be removed therefrom shortly before June the 1st; or should such temporary removal be made for the purpose of evading taxation by the municipality from which it is removed.

The meaning of the language of the Constitution does not admit of a doubt, or allow a question to be raised, concerning the *situs* of property for taxation, after it is determined where the owner has located it for his use or in his service. Its *situs* is fixed by the place where it is kept for use and service, and not by the residence of the owner.

With this understanding of section 9, Article VII, of the Constitution, as applied to that class of personal property which does not *in fact* accompany the person of its owner (the value of which grows out of its *corpus* or materiality, as distinguished from that class which is intangible and is but the evidence of right or interest in the *corpus* or materials of

value which in fact does or in fiction of necessity must accompany its owner), we think the plaintiff had no right to tax the leaf tobacco stored and kept in Salem. Whether the owner be a corporation or a natural person, its *situs* for taxation is where it is kept by its owner, where the owner allows it to abide, to remain; there it must of necessity be under the protection of the legal authority enforced, and should bear its proper part of the expenses, which I understand to be the principle underlying this section of our Constitution.

The charters of plaintiff and defendant are in conformity with Article VII, section 9. Each is granted the power to levy and collect taxes upon "all real and personal property within the (its) corporate limits including" * * * Private Laws 1891, Chap. 40, Sec. 41 (1) ; Chap. 307, Sec. 50.

The facts agreed in this case show that the buildings of the respective owners were leased for a term of years, and that leaf tobacco was continually and continuously stored therein, and there prepared for manufacture. They kept a stock of tobacco there, upon which they drew for the factory to manufacture, and, as they drew out, would replenish the stock. So, the conclusion is irresistible that the tobacco being put and kept in Salem by its owners for the purpose of storing and preparing for future use, it there acquired its *situs* for the purpose of taxation.