CITY OF DETROIT v. LOTHROP ESTATE CO.[1]

| 136 | 265 |
|---|---|
| e139 | 5 |
| 136 | 265 |
| 141 | 9 |
| 141 | 10 |

PARTNERSHIP ASSOCIATIONS—RESIDENCE—PERSONAL TAXATION.

> After the death of L., leaving an estate consisting largely of real estate in various counties, including some situated in plaintiff city and some in the township of G., his heirs organized a partnership association under 2 Comp. Laws, chap. 160, for the better management of the estate, stock being issued for the respective interests of the heirs, a majority of whom were nonresidents of plaintiff city. The articles of association provided that its principal office should be in the township of G., and an office was established therein at the house of the treasurer and principal manager, which bore a sign designating it as the office of the association, and at which all the meetings of the shareholders were held, and the general books of the association, including the record book, were kept. An office was also maintained in plaintiff city, where books of original entry were kept, rents collected, moneys disbursed, and the ordinary business of the association conducted. *Held*, that the association was a resident of

[1]Rehearing denied June 18, 1904.

the township of G., within 1 Comp. Laws, § 3834, and hence not subject to personal taxation in plaintiff city.

Error to Wayne; Donovan, J.   Submitted January 13, 1904.   (Docket No. 28.)   Decided April 5, 1904.

Debt by the city of Detroit against the Lothrop Estate Company, Limited, to recover a personal tax.   From a judgment for defendant, plaintiff brings error.   Affirmed.

This action was brought by the city of Detroit against the Lothrop Estate Company, Limited, for the recovery of city taxes upon personal property assessed against it for the year 1900, amounting to $3,015.35.   Defendant pleaded the general issue, and gave notice that it would show that its property described in the declaration was not subject to taxation by the city of Detroit.   The sole issue in the case was the residence of defendant for the taxation of personal property.

George V. N. Lothrop died July 12, 1897.   He left a large estate, including real property in the counties of Wayne, Bay, Barry, Osceola, Ingham, and Roscommon. The real estate in Wayne county was situated in the city of Detroit and the townships of Grosse Pointe and Spring-wells.   The personal property consisted of stocks, bonds, notes, and a few land contracts.   Mr. Lothrop's heirs were as follows:   The children of George H. Lothrop, son, deceased; the children of Charles B. Lothrop, son, deceased; Henry B. Lothrop, son; Baroness Huene, daughter; Mrs. William Prall, daughter; Cyrus E. Lothrop, son.

Mr. Lothrop left a last will and testament, by the terms of which, after making certain specific bequests to the Union Trust Company, as trustee for the children of Charles B. Lothrop, deceased, the residue of the estate was equally divided among the other heirs, the children of George H. Lothrop taking the share to which he would have been entitled if living.   After Mr. Lothrop's death,

it appeared to the heirs that the specific bequest to the children of Charles B. Lothrop was insufficient to place them on an exact equality with the other heirs, and they determined to remedy this by transferring sufficient property to Henry B. Lothrop, trustee for them, to equalize the estate, thus supplementing the specific bequest to the Union Trust Company. It was also found to be difficult to make an exact division of the property, on account of the large amount of real estate, some parcels of which might increase in value much more rapidly than other parcels. It was therefore desirable that for some time, at least, the property should be kept intact. It was also found to be advisable to have the property held in the name of a company, on account of the difficulty attendant upon the sale thereof by reason of the absence of some of the heirs and the minority of others. For these reasons it was decided to organize the Lothrop Estate Company, Limited, and it was accordingly organized in October, 1899, the property of the estate being transferred to it, and the interests of the several heirs being represented by certificates of stock. The respective interests were as follows: Henry B. Lothrop, 1,811 shares; Henry B. Lothrop, trustee, 945 shares; Baroness Huene, 1,811 shares; Mrs. William Prall, 1,810 shares; William Prall, 1 share; Fannie O. Lothrop, trustee for children of George H. Lothrop, 1,811 shares; Cyrus E. Lothrop, 1,810 shares; Alfred J. Ducharme, 1 share,—total, 10,000 shares. The share of William Prall, deducted from his wife's interest, and the share of Mr. Ducharme, deducted from the interest of Cyrus E. Lothrop, were given to them simply to enable them to act on the board of managers. At the time of the organization of the company, Mrs. Prall was a resident of Detroit, but was about to remove to Albany, N. Y. Henry B. Lothrop lived in the village of Grosss Pointe Farms, where he held the office of assessor. Baroness Huene lived in St. Petersburg, Russia. Therefore the interests represented by 6,378 shares belonged to nonresidents of the city of Detroit, and 3,622 shares to residents.

The articles of association provided that the principal office should be at the village of Grosse Pointe Farms, in the county of Wayne. This was the home of Henry B. Lothrop, the treasurer and principal manager of the company. The office was located at the old home of the Lothrop family, the only residence of Mr. Lothrop which has been kept in the same manner as during his lifetime. Since the organization of the company every meeting of the shareholders has been held at the principal office thus established. While these meetings have not been frequent, they have been held whenever necessary. The policy of the company has been determined at these meetings, and the managing officer of the company has continuously had his residence at this office. Upon the house is a tin sign designating it as the office of the company. The company has a telephone at this office. There is a room at this house used for office purposes. The general books of the company, including the record book, are kept at this office. The company has been assessed upon its personal property in the township of Grosse Pointe ever since its organization. The purposes of the company are thus stated in its articles:

"The purposes for which this association is formed are the general management, care, and control of the real and personal property and estate now owned by the undersigned as tenants in common, and contributed (or hereafter to be contributed) by them to the association, including the selling, leasing, improving, platting, and subdividing of real estate (including any real estate taken in part payment or exchange for any property sold or disposed of by the association), the loaning of money upon real-estate mortgages or other approved securities, the purchase and sale of interest-paying securities, and such other purposes as may be incidental or necessary to the effectual carrying out and execution of the purposes aforesaid."

The defendant has had an office in the city of Detroit since its organization. It employed a clerk, Mr. Marantette, who was produced as a witness by the plaintiff. The defendant owned considerable real estate in the city

of Detroit, received from the estate of Mr. Lothrop, deceased, and it was necessary to employ some one in that city to look after the rents, taxes, repairs, etc.   The business did not require two clerks; neither did it require the entire time of one.   Mr. Marantette was clerk for the estate of George V. N. Lothrop, for the Lothrop & Duffield Land Company, Limited, and also for Henry B. Lothrop.   He kept a separate set of books for each of said companies, and for Henry B. Lothrop, Mrs. George H. Lothrop, Mrs. George H. Lothrop, executrix, Mrs. George H. Lothrop, trustee, Mrs. Charles B. Lothrop, Henry B. Lothrop, trustee, and Charles B. Lothrop's estate.   To perform this work the only clerical force employed was Mr. Marantette and an office boy, and the expense of the two was divided among them.   The moneys passed through the hands of the treasurer of the defendant, and through Mr. Marantette, who kept the books.   Detail books are kept at the Detroit office, in which are entered the rents received, and interest on notes, bonds, and mortgages.   Checks are also issued from the office for payments.   The banking is done at the Wayne County Savings Bank.   Mr. Marantette is simply a clerk, under the control of the directors and manager of the defendant. He testified that the bulk of the work was looking after the real estate; that the average number of entries in the books would not exceed 8 or 10 a day; that the entries relating to personal property occur twice a year, when coupons and dividends become due; that only one journal had been in use, and that was about half used,—about 100 pages,—and about as many in the cashbook.   These are kept at the Detroit office.   All the detail work is done at the Detroit office by Mr. Marantette, under the direction of the manager.   Once a year the proper transfers are made to the books kept in the office at Gross Pointe Farms.   Mr. Marantette testified that it would not take more than one day a month to do the work connected with the personal property.

Mr. Henry B. Lothrop had control of the personal securities. He testified that the farm at Grosse Pointe, where he resides, is as valuable as any piece of land the company owns; that its management requires personal supervisiòn; that the lands in the outlying counties in the State are handled by agents, who account to him, and that he carries on the correspondence with them. The most of the business of collecting rents, making contracts, and other business transactions is done at the Detroit office. The defendant has been assessed in Grosse Pointe township for $200,000 personal property since its organization, and has paid taxes thereon. The court instructed the jury, in substance, that, if they found that the defendant transacted its principal business at Detroit, it was subject to taxation there. The jury rendered a verdict for the defendant.

*Timothy. E. Tarsney* and *John W. McGrath*, for appellant.

*Orla B. Taylor* (*John C. Donnelly*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The provision of the tax law under which plaintiff asserts the liability of the defendant is as follows:

"All corporate property, except where some other provision is made by law, shall be assessed to the corporation as to a natural person, in the name of the corporation. The place where its office is located in its articles of incorporation shall be deemed its residence: *Provided*, its business is actually transacted at such office; but if it shall establish its principal office in any other place than the place named in its articles of incorporation, then the place where it transacts its principal business shall be deemed its residence for all the purposes of this act." Section 3834, 1 Comp. Laws.

The defendant is organized under chapter 160, 2 Comp. Laws. The law requires that the articles of association shall state the character of the business to be conducted, and the location of the same. The law contemplates that

associations formed under it may have more than one office, for it provides that on the outside of every office or place where it carries on business it shall have its name in conspicuous letters, with the word "Limited" attached. The main purpose of the defendant is to manage, care for, and control, and eventually divide, the property left to its shareholders by the late George V. N. Lothrop. This property consisted largely of real estate and personal property located in various counties of the State. Agents were appointed in each place to look after its property there situated. Its personal property, consisting of stocks, bonds, and mortgages, was under the control of Mr. Henry B. Lothrop, its treasurer, whose residence was and is at the placed fixed by the association as the location of his business. It was necessary to have some one in Detroit look after its property there. The question of the location of a business of this character is not to be determined by the fact that rents are collected on the property situated in any particular place, or that receipts from elsewhere are sent to any particular office for entry upon the books, or that its account books are kept in any particular place, or that its clerical work is there done. Where an association of this kind has several offices, it is essential that it locate somewhere for the purposes of taxation, as well as other purposes, and there is no reason why it should not select any one of its offices' as its location. In this case there was no necessity for two clerks. There was not even business enough for one. The work of drawing contracts, receiving rents, and issuing checks in payment of taxes is purely clerical, and this work required but little time. If, under these circumstances, it may not choose its location, then its location will depend upon what a jury may say is its principal office or place of business. Would the finding of a jury in one place be conclusive upon a finding of a jury in another?

The character of the business and the purposes of a corporation are important elements in determining its *situs* for taxation. The only property of the defendant requir-

ing any fire or police protection of the city is its own real estate, which is assessed and taxed in the city, and bears its share of the burdens. It has no active, physical business, like that of merchandising or manufacturing. Its only employés in Detroit are two, who do its work of collecting rents, taking care of the real estate, and keeping its books. It has employés in other places. The greater part of defendant's property is real estate. The care and management of this is its principal business. The collection of the interest upon its personalty occupies but little time, either in collecting or recording upon the books of account, and this is done by a clerk. The policy in controlling and managing this real estate and personal property is fixed by the managers and shareholders at Grosse Pointe. There they meet to do whatever is necessary for them to do.

Counsel for the city rely upon *Detroit Transportation Co.* v. *Detroit Board of Assessors,* 91 Mich. 382 (51 N. W. 978). There is no similarity between the facts of that case and those of this. That was a suit in *mandamus,* and the return of the respondents was conclusive. The relator was a transportation company, doing business upon the Lakes. It located its first office at a roadhouse in the township of Hamtramck, and, when the territory where that was located was annexed to the city, it moved its office to a farm-house, where it had no property and no business, and could not have. None of its directors or stockholders lived in the township of Hamtramck. They lived in Detroit. All of its business was done at the Detroit office. The answer also showed that the stockholders never held a meeting at this roadhouse, but rode up past it and back in a street car, and held their meetings. We said in that case:

"The citizen has a right to reside in the country and do business in the city. This, however, must be an actual residence. One cannot maintain a nominal residence in the country while his actual residence is in the city, and thus avoid taxation in the city. A corporation possesses

the same right in this respect that the individual does. A corporation must have a local habitation. It cannot fix a nominal domicile in the country while its actual domicile for business is in the city."

In this case the office is fixed at the home of one of the principal shareholders and the treasurer of the company, upon the most valuable single piece of real estate owned by it. A majority of the shareholders are nonresidents of Detroit. It is as much the duty of the defendant, through its officers, to look after the property at Grosse Pointe Farms, as it is to look after the property in Detroit, Bay City, or elsewhere. If the defendant's detail books had been kept at the Grosse Pointe Farms, but the rents had been collected, taxes paid upon the Detroit property, and that property taken care of by a clerk or other person in an office in the city of Detroit, would a jury or court be justified in saying that, because more of its business was done in Detroit than at Grosse Pointe Farms, that was its principal office? We think that the defendant had a right to locate its place of business at Grosse Pointe Farms, and that that is its place for the purpose of taxation. In this view of the case it becomes unnecessary to discuss the alleged errors in the charge of the court, inasmuch as the jury reached the correct conclusion.

Judgment affirmed.

The other Justices concurred.