# JANUARY TERM, 1905.

TEAGAN TRANSPORTATION CO. *v.* BOARD OF ASSESSORS OF CITY OF DETROIT.

DULUTH & ATLANTIC TRANSPORTATION CO. *v.* SAME.

WOLVERINE STEAMSHIP CO. *v.* SAME.

1. TAXATION—SITUS OF PROPERTY—NAVIGATION COMPANIES.
   Under section 3834, 1 Comp. Laws, where the only business a corporation transacts at the place named as its office in its articles of incorporation is the annual meeting of stockholders, its residence for the purpose of taxation is the place where its principal business is conducted, such as receiving and disbursing its funds.

2. SAME—UNIFORMITY—CONSTITUTIONAL PROVISIONS.
   The proviso of section 3834, 1 Comp. Laws, that "the personal property of all corporations of the State for the purpose of maritime commerce and navigation shall be assessed only in the city, village, or township which is stated in their articles of association to be the location of their general office for business," attempts to confer on such corporations the special privilege of fixing the situs of their property for the purpose of taxation, in violation of section 11, of article 14, of the State Constitution, requiring a uniform rule of taxation.

Certiorari to Wayne; Mandell, Frazer, Brooke, Donovan, Rohnert, and Hosmer, JJ. Submitted October 4, 1904. (Calendar Nos. 20,613, 20,614, and 20,615.) Decided January 30, 1905.

Separate applications for mandamus by the Teagan Transportation Company, the Duluth & Atlantic Transportation Company, and the Wolverine Steamship Company to compel the board of assessors of the city of De-

troit to strike certain assessments from the tax rolls.    To review orders denying the writs, relators bring certiorari. Affirmed.

*Graves & Hatch,* for relator Teagan Transportation Co.

*Angell, Boynton, McMillan & Bodman,* for other relators.

*Timothy E. Tarsney,* for respondent.

CARPENTER, J.   Writs of certiorari bring before us for review three mandamus proceedings determined in the circuit court for the county of Wayne.   Each of the above-named relators is a corporation engaged in transporting goods by water, and each asks for a mandamus (which the lower court refused to grant) compelling respondent to strike from the assessment rolls an assessment on account of certain steamboats owned by it.   Said steamboats during the season are engaged in navigating the Great Lakes, and are seldom in the city of Detroit.   In the articles of incorporation of the first two relators the township of Hamtramck, Wayne county, is named as the location of their general offices for business.   In the articles of incorporation of the last-named relator, viz., the Wolverine Steamship Company, the village of Utica, Macomb county, is named as the location of its general office for business. At the place named as the location of their offices relators never had any regular business office.   All they did there was to use the office or house of another for their annual stockholders' meeting, and in case of the Teagan Transportation Company also for the first meeting of the directors elected at said stockholders' meeting.   Substantially all the other business of said Teagan Transportation Company which was not done on its boats was done in the city of Detroit.   The management of the ordinary business of the last two named relators was carried on by their agent at Cleveland.   Their funds,

however, except those required "to pay the ordinary running expenses of the boats and the officers and crew," were received and disbursed by their treasurer at Detroit; and it may be inferred that this official at Detroit decided any business matters "outside the ordinary course" not necessary—that is, as we infer, which he may decide to be not necessary—to submit to the board of directors.

The question of whether relators' property is taxable in the city of Detroit depends upon the constitutional validity and construction of section 3834, 1 Comp. Laws. That section reads:

"All corporate property, except where some other provision is made by law, shall be assessed to the corporation as to a natural person, in the name of the corporation. The place where its office is located in its articles of incorporation shall be deemed its residence: *Provided,* Its business is actually transacted at such office; but if it shall establish its principal office in any other place than the place named in its articles of incorporation, then the place where it transacts its principal business shall be deemed its residence for all the purposes of this act. If there be no principal office in this State, then at the place in this State where such corporation or agent transacts business: *Provided, further,* That all the personal property of all corporations heretofore or hereafter organized under the laws of this State for the purpose of engaging in maritime commerce or navigation shall be assessed only in the city, village, or township, which is stated in their original articles of association or in any amendment thereof heretofore or hereafter made to be the location of their general office for business."

This section was section 11 of the general tax law passed in 1893. See Act No. 206, Pub. Acts 1893. As originally enacted, the section contained no special provision for the taxation of property of corporations engaged in navigation. The proviso relating to the taxation of such property (the last proviso above quoted) was put in the section by amendment in 1895. See Act No. 229 of the Public Acts of 1895. It is obvious that, if this proviso is constitutional, relators' property was not taxable in Detroit, but was tax-

able at the place named for the location of its general office for business. The contention of respondent's counsel that this property is taxable in Detroit compels them to affirm these two propositions: (1) That the proviso is unconstitutional; (2) that the statute, with the proviso eliminated, properly construed, makes relators' property taxable in the city of Detroit. We will consider each of these questions, but, as we should not determine a statute to be unconstitutional until it is shown that such determination is necessary to a disposition of the case, we will consider them in inverse order.

2. If we eliminate the proviso, the constitutionality of which is in question, the statute made the property taxable "where its office is located in its articles of incorporation: * * * Provided, Its business is actually transacted at such office; but if it shall establish its principal office in any other place than the place named in its articles of incorporation, then the place where it transacts its principal business shall be deemed its residence for all the purposes of this act. If there be no principal office in this State, then at the place in this State where such corporation or agent transacts business."

The court below, by a majority opinion, denied the mandamus. It must be assumed that the court found as a fact that relator's business was not actually transacted at the office· named in their articles of incorporation, and was transacted at the city of Detroit. We cannot review this finding of fact if there was evidence to support it. We can only inquire whether there was such evidence. It appears that all that was done at the office named in the articles of incorporation was to hold the annual meeting of stockholders, and in the case of the Teagan Transportation Company also the first annual meeting of directors elected by the stockholders. Unless we decide that the holding of annual meetings of stockholders and directors is the principal business of said corporations, we must hold that that principal business was not transacted at the place named in the articles of incorporation. It is true that we

held in the *City of Detroit* v. *Lothrop Estate Co.*, 136
Mich. 265, that the principal business was done at the
office where the manager resided, and where the managers
and shareholders "meet to do whatever is necessary for
them to do." This by no means decides that the annual
meeting of stockholders constitutes the principal business
of the corporation. To so hold would, in my judgment,
clearly frustrate the legislative purpose. It is said that
the personal property of the corporation should be taxable
at the place "where its office is located in its articles of in-
corporation: * * * *Provided*, Its business is actually
transacted at such office." By "business" the legislature
meant something more than the annual meeting of stock-
holders and newly chosen directors. If it did not, other
and more appropriate language would surely have been
used. We come, then, to the question, Had the lower
court the right to infer that the relator corporations did
such business in the city of Detroit as to make their per-
sonal property taxable there? We have shown that sub-
stantially all the business of relator the Teagan Trans-
portation Company was done in Detroit; that the treasurer
of the other relators resided in Detroit, had (and, it may
be inferred, there exercised) superior powers of business
management, and that he there received and disbursed
the funds of said corporation except those disbursed for
the ordinary running expenses of their boats. If the hold-
ing of annual meetings of stockholders and directors did
not constitute the principal business of the corporations
(and we have stated that in our judgment it did not), it
follows that the personal property of the corporation was
taxable either at the place where it established an "office
for the transaction of its principal business, or, if it had
no principal office, then at the place in this State where
such corporation transacts business." It is immaterial
whether we say that the place where the corporation did
its business in Detroit was "its principal office for the
transaction of business," or whether we say that it had no
principal office in that city. The fact that it transacted

business of the character already stated—business which was obviously more than clerical—made that the place where its personal property was taxable under the hypothesis that the proviso of 1895 was unconstitutional. We come to the consideration of the question :

1. Is the provision that "The personal property of all corporations heretofore or hereafter organized under the laws of this State for the purpose of engaging in maritime commerce or navigation shall be assessed only in the city, village, or township which is stated in their original articles of association or in any amendment thereof heretofore or hereafter made," constitutional ?   It will be noticed that this provision is not confined to "vessel property," so called, but extends to all the personal property of corporations "engaged in maritime commerce or navigation." While the personal property of individuals is taxable at their place of residence, and while the property of other corporations is taxable at the place of their principal business office, corporations engaging in maritime commerce or navigation may have their property taxed at whatever place they may choose to designate in their articles of incorporation.   As the rate of taxation varies much in different localities, it gives to the latter corporations the right to select that place in which the rate of taxation is lowest.   It thus gives to them the privilege of paying less taxes than must be paid by other corporations or by individuals engaged in precisely the same business.   Neither can it be said that individuals have the same right to select the place in which their property will be taxed because it will be taxed at the place in which they may choose to reside.   It is true that individuals may determine where they will reside, and corporations in general may determine where they will do business, but, in order to make their property taxable at that place, the individuals must actually reside there (see *Beecher* v. *Common Council of Detroit*, 114 Mich. 228), and the corporations must actually do business there (see *Detroit Transportation Co.* v. *Board of Assessors of Detroit*, 91 Mich.

382).  Neither such corporations nor individuals have the same right to determine the situs for the taxation of their personalty as this statute undertakes to give to corporations engaged in maritime commerce and navigation.

The question arises whether such a law does not violate the provision contained in section 11, art. 14, of our Constitution, requiring a uniform rule of taxation.  In *Western Transportation Co.* v. *Scheu*, 19 N. Y. 408, and *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449 (cases relied on by relators), laws like that under consideration were enforced; but those cases throw no light on the constitutional question before us.  There no constitutional question was raised—perhaps none could be raised—and no such question was considered by the court.

In Cooley on Taxation, after demonstrating the proposition that perfect uniformity and perfect equality in taxation is unattainable, it is said:

"But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible. It is immaterial on what ground the selection is made—whether it be because of residence in a particular portion of the taxing district, or because the persons selected have been remiss in meeting a former tax for the same purpose, or because of any other reason, plausible or otherwise; for, if the principle of selection be once admitted, limits cannot be set to it, and it may be made use of for the purposes of oppression, or even of punishment."  1 Cooley on Taxation (3d Ed.), p. 260.

In the note to this text is the following quotation from the opinion of the court in *Atchison, etc., R. Co.* v. *Clark*, 60 Kan. 826 (47 L. R. A. 77):

"Absolute equality in taxation is, of course, unattainable; but a law the manifest purpose and legitimate result of which is discrimination and inequality cannot be sustained."

In *Standard Life & Accident Ins. Co.* v. *Board of Assessors of Detroit*, 95 Mich. 466, this court held that

a law which subjected banks and insurance companies to a higher rate of taxation than that of other individuals and corporations was unconstitutional.

In *Pingree* v. *Auditor General*, 120 Mich. 95 (44 L. R. A. 679), and *Detroit Citizens' St. Ry.* v. *Common Council of Detroit*, 125 Mich., at page 694, similar decisions were made.

It follows from these decisions that, if the legislature had attempted to impose an onerous burden of taxation upon the property of corporations engaged in maritime commerce and navigation, such legislation would be void. But the act in question, instead of imposing an onerous burden upon such corporations, confers upon them a special privilege.

The question arises—and this is a question not argued by counsel, but which must necessarily be determined before we adjudge the law unconstitutional—whether the act can be sustained as a partial exemption from taxation. It cannot be supposed that the legislature enacted this law upon the ground that the property of corporations engaged in maritime commerce and navigation should be exempt. So far as that property consists of vessels engaged in commerce, it in no respect differs from vessels belonging to individuals engaged in commerce. So far as it consists of other tangible or intangible personal property, it in no manner differs from such property belonging to other individuals and corporations. This law cannot be sustained as a law partially exempting property from taxation unless the legislature has power to single out individuals or corporations from the class to which they belong, and capriciously exempt them from taxation. We are forced to say that the legislature has not that power.

In 1 Cooley on Taxation (3d Ed.), pp. 381, 382, it is stated:

"It is difficult to conceive of a justifiable exemption law which should select single individuals or corporations, or single articles of property, and, taking them out of the class to which they belong, make them the subject of ca-

pricious legislative favor.   Such favoritism could make no
pretense to equality.   It would lack the semblance of legit-
imate tax legislation."

See *Hamilton* v. *Wilson,* 61 Kan. 511 (48 L. R. A.
238); *City of Lexington* v. *McQuillan's Heirs,* 9 Dana
(Ky.), 513.   We are bound, therefore, to declare that the
constitutional provision requiring uniformity of taxation
prevents the legislature enacting a law which it must be
presumed was intended to and does tax property at a rate
different from that imposed on all property of precisely
the same class.   Tested by this principle, the law (the
proviso) under consideration is unconstitutional, for, as we
have already shown, it clearly taxes (and we must assume
that the legislature intended that it should tax) the prop-
erty of corporations engaged in maritime commerce and
navigation at a rate different from all other property of the
same class.   But it is said that this result is brought about
in an unusual manner, viz., by selecting the situs for tax-
ation.   And it is earnestly contended that the constitutional
requirement of uniformity does not affect the legislative
power to determine that situs.   If this argument is sound,
it leads to some peculiar consequences.   In the case be-
fore us it permits a particular class of corporations to have
their property assessed for taxation at that place in the
State where taxation is lowest.   If relators' argument is
sound, it would be competent for the legislature to declare
that such property should be taxed at that municipality in
the State whose rate of taxation was highest.   If such a
law were passed, would it not be clear that relators could
successfully maintain that their property was taxed at a
rate higher than that imposed on other property of the
same class ?

In support of their argument that the requirement for
uniformity does not affect the power of the legislature to
determine the situs for taxation, relators cite *State* v.
*Runyon,* 41 N. J. Law, 98; *Crawford* v. *Linn County,*
11 Or. 482; *City of Winston* v. *City of Salem,* 131 N.
C. 404.   What is decided in *State* v. *Runyon,* supra, is

sufficiently shown by the following quotation from that opinion:

"The framers of the constitutional amendments did not aim at the impossible. They contented themselves with the accomplishment of so much of good as was attainable under the single requirement that 'property shall be assessed for taxes under general laws, and by uniform rules, according to its true value.' In other respects the legislative power over taxation was left unimpaired. If property be such in its nature as, upon ordinary principles of taxation, to be capable of having a twofold situs for taxation, the legislature may select either as the place where the tax shall be laid."

Conclusive proof is furnished that the court did not intend by this statement to assert the proposition contended for by relators by other language in the opinion, which I quote:

"The object of this constitutional provision was the equalization of taxation in its relation to the several parts of the State, and the prevention of unjust discriminations in the apportionment of the public burdens among its citizens liable to taxation."

In *Crawford* v. *Linn County*, supra, it was held that the constitutional provision requiring uniformity was not violated by a law which taxed mortgages covering land in two or more counties at the place where the mortgagee resides, and which taxed other mortgages where the mortgaged land was situated. This decision proceeded upon the ground that the court could not say that this determination of situs was favorable or burdensome to either of these two classes of mortgagees. And it was said, "If the court could know judicially that the one or the other were hurt, it would be sufficient." It is true that it is said in this opinion, "A limitation on the power of the legislature to fix rates of assessment and taxation has nothing to do with the power of the legislature to fix the situs of personal property for the purposes of taxation." If by this the court intended to assert the proposition contended for by relators, it has no more than stated a dictum.

In *City of Winston* v. *City of Salem*, supra, it was decided that a law which made personal property generally taxable at one's place of residence and the personal property of partnerships and corporations taxable at their places of business was constitutional. It may be said in this case, as was said in the case of *Crawford* v. *Linn County*, that the court could not judicially know that this method of taxation discriminated in favor of or against either of these classes of taxpayers. In saying in its opinion that the constitutional provision requiring uniformity left the legislature " free, as always heretofore, to prescribe regulations as to the situs of personal property," the court went far beyond the requirements of the case, and, like the Oregon case, has merely stated a dictum.

We are bound to say from this examination of authorities that there is nothing but dicta to sustain relators' contention. We are therefore free to determine on principle whether the constitutional requirement of uniformity affects the legislative authority to determine the situs for the taxation of personal property. This is not a difficult inquiry, especially if the proposition be stated in different, but in equivalent, language, viz., can the legislature, in determining the situs for the taxation of personal property, disregard the constitutional provision requiring uniformity ? The legislature derives its authority to determine the situs for the taxation of personal property—and it certainly has that authority (see *Common Council of Detroit* v. *Board of Assessors of Detroit*, 91 Mich. 78 [16 L. R. A. 59])—not from any express constitutional grant, but from the grant of general authority to legislate. The provision requiring uniformity of taxation is a constitutional limitation on that authority. To contend that in determining such situs the legislature may ignore the constitutional requirement of uniformity is to contend that in exercising its general authority the legislature may ignore the constitutional limitation on that authority. This argument nullifies all constitutional limitations on legislative authority, and is therefore unsound. We are

therefore forced to conclude that the legislature, in determining the situs for the taxation of personal property, must regard the constitutional requirement of uniformity, and the disregard of that requirement makes the law under consideration unconstitutional and void. We do not, by our decision, negative relators' claim that it is unjust that their property (which, like much other property similarly located, receives no benefit from the expenditures of municipal tax in Detroit) should contribute toward their payment. Neither do we declare that it is beyond the power of the legislature to enact a law which will remedy this injustice. What we do say is that any such law—unlike that before us—must regard the constitutional requirement of uniformity.

It follows that the lower court was right in refusing a mandamus, and their decision is affirmed, with costs.

MOORE, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.