The UNION STEAMBOAT COMPANY, Respondent, *v.* The CITY OF BUFFALO, Appellant.

For the purposes of taxation, the designation of the place in which the principal office is to be located, in the certificate of incorporation of a company organized under the act providing for the incorporation of companies to navigate the lakes and rivers (chap. 232, Laws of 1854), is conclusive; and in the county thus designated alone can the personal property of the corporation be lawfully taxed.

*It seems*, that the facts that the principal office of such a corporation was located by its certificate with a view to avoid taxation, and that the business of the company is mainly carried on in another county, are immaterial.

The certificate of plaintiff, a corporation organized under said act, located, as specified therein, the "principal office for managing the affairs of such company," instead of using the language of the statute in relation to the taxation of corporations (1 R. S. 289, § 6), to wit: "the principal office or place for transacting the financial affairs of the company." *Held*, that the variance was immaterial; that, within the meaning of said statute, the principal office was that fixed by the certificate in accordance with the mandate of the act under which it was incorporated.

Also *held*, that the act of 1859 (chap. 388, Laws of 1859) "to make corporations in the city of Buffalo taxable the same as corporations in other cities," did not change the rule as to corporations doing business in that city whose principal office was located by its certificate in another county.

Where the assessors of a city in which the principal office of a corporation is not located have assessed its personalty, and where the corporation coerced by a levy upon its property has been compelled to pay the tax, an action is maintainable by it against the city to recover back the money so paid. It is not confined to a remedy by *certiorari* to correct the illegal assessment.

*It seems* that the latter remedy is the appropriate one where the assessors have jurisdiction, but have simply erred in judgment.

(Argued October 1, 1880 ; decided October 15, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court without a jury.

This action was brought to recover back moneys alleged to have been paid by plaintiff under protest and to release its property from a levy and threatened sale under a tax-warrant issued by defendant's comptroller.

The facts are sufficiently set forth in the opinion.

*Jno. B. Greene* for appellant. The company's remedy is by a review of their decision by *certiorari*. (*Swift* v. *City of Poughkeepsie*, 37 N. Y. 512; *People ex rel. Citizens' Gas-Light Co.* v. *Assessors*, 39 id. 81; *Bank of Commonwealth* v. *Mayor of New York*, 43 id. 184; *Union Nat. Bk. of New York* v. *Mayor of New York*, 51 id. 638; *Niagara Elevating Co.* v. *McNamara*, 2 Hun, 416; *Mut. Ben. L. Ins. Co.* v. *Board of Supervisors*, 33 How. 359; *Genesee Valley Nat. Bk.* v. *Board of Supervisors*, 53 Barb. 223; *Tilden et al.* v. *Mayor, etc., of New York*, 56 id. 340; *Heywood* v. *City of Buffalo*, 14 N. Y. 534.) In the navigation act of 1854, and the manufacturing act of 1848, the legislature means that the place designated in the certificate shall be one at which the company can do its business specified in the certificate itself. (*Western Transportation Co.*, 19 N. Y. 408.)

*George B. Hibbard* for respondent. The assessors had no authority to pass on the question as to where the plaintiff was

legally located. They had no jurisdiction or power to assess the plaintiff in the city of Buffalo, unless its principal office was so located as to make it taxable there. (*People, etc.,* v. *The Supervisors, etc.,* 1 Kern. 563; *Mygatt* v. *Washburn,* 15 N. Y. 316; *Oswego Starch Factory* v. *Dolloway,* 21 id. 449; *Nat. Bk.* v. *The City of Elmira,* 53 id. 49; *Dorwin* v. *Strickland,* 57 id. 492; *Matter of the New Catholic Protectory,* 77 id. 342.) Action can be sustained for money paid under duress of property in such cases. (*Wilson* v. *The Mayor, etc.,* 1 Abb. 26, 27; *Harmony* v. *Bingham,* 12 N. Y. 99; *Briggs* v. *Boyd,* 56 id. 289; *Scholey* v. *Mumford,* 60 id. 498; *The Nat. Bk.* v. *The City of Elmira,* 53 id. 49, 58, 59; *Newman* v. *The Supervisors, etc.,* 45 id. 676, 682–688; *Chapman* v. *The City of Brooklyn,* 40 id. 372, 380; *Dewey* v. *Supervisors, etc.,* 62 id. 294; 2 Hun, 392; *The Bank, etc.,* v. *The Mayor, etc.,* 43 id. 184, 186, 187, 189; *Pacific, etc.,* v. *The Mayor,* 57 How. Pr. 511; Sess. Laws 1870, vol. 2, p. 1179.) There could be only one place where the plaintiff could be legally taxed. Beyond all question it was taxable in the county of Rockland. (*The People, etc.,* v. *Com. of Taxes,* 58 N. Y. 242; Hun, 243; *The People, etc.,* v. *Com., etc.,* 23 N. Y. 224; *The People ex rel.* v. *Com'rs, etc.,* 64 id. 541; *Hays* v. *The Pacific Mail Co.,* 17 How. U. S. 596; *Morgan* v. *Parham,* 16 Wall. 471; *The People* v. *The Com., etc.,* 23 N. Y. 224, 225, 230, 231; Sess. Laws, 1861, p. 467; id. 1864, p. 1154; *Doyle* v. *Peerless Petroleum Co.,* 44 Barb. 239; *Pease* v. *Willett,* 19 Abb. 416; *S. C.,* 1 Rob. 131; *The Buffalo & A. R. Co.* v. *Cary,* 26 N. Y. 75; *The Western Transp. Co.* v. *Scheu,* 19 id. 408, 410, 411; *The Oswego Starch Factory* v. *Dolloway,* 21 id. 449.)

FINCH, J. The plaintiff has recovered a judgment against the defendant for something more than $10,000, upon the ground that by means of an illegal assessment and the force and coercion of its collection, that sum had been unlawfully wrested from them by the city authorities and was unjustly withheld.

The Union Steamboat Company was organized, and commenced business in the year 1869, under an act of the legislature entitled "An act for the incorporation of companies formed to navigate the lakes and rivers," passed April 15th, 1854. It filed in the proper offices the required certificate of incorporation, in and by which, as directed by the act, it certified and declared that "the name of the town and county in which the principal office for managing the affairs of such company is to be situated is the town of Clarkstown, in the county of Rockland, in the State of New York." For a few years after its incorporation it seems to have escaped taxation, but in 1873 was assessed in the county of Rockland, and has ever since paid taxes there. In that county its annual meetings for the election of directors and the choice of officers of the company have been held, sometimes in a room in the village of Nanuet, sometimes in the rear of a store in Upper Nyack, and once in a railroad car, but every year in the town of Clarkstown.

Such annual meetings having been held, the rooms occupied for that purpose were deserted by the company for the rest of the year, except that their sign, "The Union Steamboat Company," was left to the solitary watch of their principal office for managing their affairs. All the rest of the business of the company was conducted mainly at the city of Buffalo. That business was the transportation of freight and passengers on the great lakes. In its transaction some twenty steam propellers, whose home port was Buffalo, were employed. In that city their general managers resided, and controlled a large and profitable business, with the aid of numerous clerks, who kept there the general accounts of the company, received its income and paid its expenses, and managed its affairs very much after the manner of a resident corporation.

Assuming from the external indications that their duty required such action, the assessors of the city of Buffalo, in the year 1876, assessed the company upon its personal estate on a valuation of $600,000. The general manager of the company appeared before the assessors to protest against their action and

induce them to reverse it, and for that purpose presented to them an affidavit alleging that the principal office of the company was in the county of Rockland; that it was assessed and paid taxes there; and produced a copy of the certificate of incorporation, claiming that the company could not be lawfully assessed in the city of Buffalo. His protest, however, proved ineffectual; the assessment remained; in due season the tax collector appeared, and the company refusing to pay, he levied upon one of their steam propellers and was proceeding to sell it, when they, to save their property, and under the coercion of the levy, protesting that the tax was illegal, paid the same, and thereafter brought this action against the city to recover the money alleged to have been wrongfully collected.

The primary question, therefore, presented is the right to tax this corporation in the city of Buffalo.

It has already been twice decided by this court against the views of the appellant. (*The Western Transportation Co.* v. *Scheu*, 19 N. Y. 408; *The Oswego Starch Factory* v. *Dolloway*, 21 id. 449.) In these cases the whole subject was considered and discussed. We held that for the purposes of taxation the principal office of the company was fixed conclusively by the certificate of incorporation, and that in the county thus designated, and there alone, it could be lawfully taxed. We determined that such was the legal effect of the statute prescribing the manner of taxation, and the reasons for that conclusion drawn from the law itself, and the manifold evils and inconsistencies which would result from a contrary construction were so plainly and forcibly stated as to make either repetition or further discussion unnecessary.

Some effort is made to distinguish the present case from those cited. It is said that the statute relating to the taxation of corporations uses the language " shall be assessed in the town or ward where the principal office, or place for transacting the financial concerns of the company, shall be," while the certificate, in this case, locates only the "principal office for managing the affairs of such company." But the difference of precise expression leads to no difference in the result. The certificate

follows, as it must, the language of the statute requiring it to state the locality of the principal office of the company, and that principal office is thus fixed and established. The general statute prescribing where corporations are to be taxed was framed to meet two classes of cases: first, those which had a principal office, fixed by their certificate, in accordance with the mandate of their charter, or the general law under which they were organized: and, second, those which had no such principal office fixed by their certificate of incorporation, because their charter did not require it. The former was to be taxed in the locality of their principal office. The latter in the "place for transacting the financial concerns of the company." Thus all possibility of mistake or oversight was prevented. If the company had a principal office, fixed by its certificate, that, and that only, was its residence for purposes of taxation. If it had no principal office so located by its certificate, then it was to be taxed where its financial concerns were transacted. The case before us, like those referred to, was equally in the class first named and governed by the same rule of taxation.

It is urged also that the purpose for which the principal office of the plaintiff was located in the county of Rockland was to avoid taxation. That may be; although no such fact is embraced in the findings of the trial court. We held that to be immaterial in the case of *The Western Transportation Company.* We have nothing to do with the motive. We can deal only with the fact. If such an evil exists, another authority than ours must provide for its correction.

It is argued that the law of 1859, entitled "An act to make corporations in the city of Buffalo taxable the same as corporations in other cities and counties of the State" (Laws 1859, chap. 388, p. 915), has changed the rule, and made the plaintiff liable to taxation in Buffalo. That act had no such purpose and carries with it no such meaning. It was evidently framed to meet the accidental evil of a different basis and rate of taxation in Buffalo from that prevailing elsewhere in the State, and for no other purpose. So far from seeking to draw corpora-

tions, legally located and taxable elsewhere, into the net of the defendant's taxing power, its plain language shows that it was meant to operate only upon corporations already taxable in Buffalo because their principal office was legally located and established there.

It is again insisted that the plaintiff has mistaken its remedy. The argument is that the assessors in this case acted judicially, and any error on their part can only be corrected by a *certiorari*. The difficulty is that their action was not only erroneous but without jurisdiction. It is doubtless true that where they have jurisdiction, and simply err in judgment, a *certiorari* is the proper remedy. Most of the cases cited by the learned counsel of the appellant were of this character. But none of them hold that such is the proper and sole remedy where the assessors have no right to act at all. They cannot acquire jurisdiction by deciding that they have it. In the present case they had no jurisdiction over this corporation for the purpose of taxation. Their action furnished no defense to the city when called on to refund the money it had illegally, and by coercion obtained. If, in such a case, a *certiorari* is one mode of redress, it is not the only one. In *The National Bank* v. *The City of Elmira* (53 N. Y. 49), Judge CHURCH said of a case where jurisdiction was wanting: "The remedy by *certiorari* is not adequate; it is dilatory, and rests in the discretion of the court to give it or not. It is appropriate to review erroneous assessments. * * * The plaintiff's property has been forcibly taken from it in violation of law, and it would be discreditable to the proper administration of justice not to give an effectual remedy."

We think, therefore, the action was maintainable and the judgment right. It should be affirmed, with costs.

All concur.

Judgment affirmed.