COUNTY OF KAUAI, EX REL. JOHN D. WILLARD, COUNTY ATTORNEY, AND ALBERT S. WILCOX, WILLIAM H. RICE AND GEORGE N. WILCOX, CITIZENS, VOTERS AND TAX PAYERS IN THE FOURTH TAXATION DIVISION AND COUNTY OF KAUAI, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED v. JAMES L. HOLT, TAX ASSESSOR OF FIRST TAXATION DIVISION AND J. K. FARLEY, TAX ASSESSOR OF FOURTH TAXATION DIVISION.

APPEAL FROM CIRCUIT JUDGE, FIFTH CIRCUIT.

ARGUED OCTOBER 23, 24, 1905. DECIDED NOVEMBER. 6, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

INCOME TAX—*corporation assessable in what taxation division.*

Under the income tax law which requires each corporation to make a return in "its taxation division" and also all persons and corporations to make their returns in the taxation division in which they "reside, locate or do business," corporations as well as persons should in general make their returns in the division in which they reside, if they reside in the Territory, and in the division in which they do business, if they reside without the Ter-

ritory; not in the division in which their property is situated, if that is a different division.

CORPORATION RESIDENCE—*where, for purposes of taxation.*

The residence of a Hawaiian corporation is necessarily in the Territory of Hawaii—the place of its creation. As between different taxation divisions within the Territory, its residence is in that in which it holds its stockholders' and directors' meetings, keeps its stock books, directs the management of its business, conducts its general financial transactions and performs its corporate functions, especially if the place of its principal office is declared by its charter or articles to be in that division; not in that in which most of its property is situated and in which it conducts most of its business so far as actual production is concerned and keeps most of its books of original entry, if that is a different division. The mere fact that its directors' meetings also are held in the latter division is not sufficient to make that its residence; nor is the fact that most of its stock is owned by one person who resides in the latter division and manages the property much as he pleases sufficient. If its meetings are held and its general corporate functions performed without the Territory and its charter does not designate its principal office the latter division is its place of taxation—as being either its residence or its place of business in the Territory.

MANDAMUS—*denied, when no legal duty.*

There being no legal duty on the part of the assessor of one division to send tax returns filed with him to the assessor of another division where similar returns should have been filed, mandamus to compel him to do so is denied.

'ID—*denied, when useless.*

Mandamus to compel the assessor of the division in which a corporation should have made its return, to assess and collect its income tax, is denied, it appearing that it had no assessable income during the year in question.

ID.—*parties.*

When a statute requires one half of the income taxes collected by the Territory to be turned over to the county in which they are collected, and the assessors of two taxation divisions, covering two counties respectively, act on the theory that certain corporations should be assessed in one of those divisions, and mandamus is brought to compel the assessor of the other division to make such assessments, the county in the first division is not a necessary party.

When county government was provided for (Laws of 1905,. Acts 39, 54) no system of county taxation was established, but the Territorial system of taxation was retained, and portions of the Territorial funds were required to be paid over to the counties for their support. Among other things it was provided (Laws 1905, Act 93) that "fifty per centum of the total amount of poll and school taxes and taxes on property and *incomes,* collected in each county, shall be paid by the treasurer of the Territory of Hawaii to the treasurer of such county in the following manner," etc. Ever since the enactment of the income tax law in 1901 (R. L., Ch. 99) the sugar corporations, which in general have their principal offices with their agents in Honolulu and their plantations in other parts of the Territory, as a rule have made their income tax returns, and such taxes have been assessed and collected, at Honolulu in the Island of Oahu, now the county of Oahu, which corresponds with the first taxation division, but in 1904 and 1905 certain corporations having their plantations on the Island of Kauai, now part of the county of Kauai, which corresponds with the fourth taxation division, proposed to make their returns and be assessed and pay their income taxes in that division, but the assessor of that division and of the first division, under the directions of the treasurer of the Territory, declined to accede to that proposition and insisted that such returns should be made and the taxes assessed and collected in the first division. In consequence of this action and the provision referred to for the payment of half the income taxes collected in each county to the treasurer of such county, the county of Kauai and several tax-payers thereof now make this application for a writ of mandamus to compel the respondent Holt, assessor of the first division, to forward to the respondent Farley, assessor of the fourth division, the income tax returns for this year received from the said corporations, which proposed to make their returns in the fourth division and certain other corporations,

namely, Lihue Plantation Co., Ltd., Koloa Sugar Co., Ltd., Kekaha Sugar Co., Ltd., McBryde Sugar Co., Ltd., Hawaiian Sugar Co., Waimea Sugar Mill Co., Princeville Plantation Co., Ltd., and Kilauea Sugar Co., and to compel the said respondent Farley to assess and collect the income taxes of the said corporations in the fourth division. The circuit judge of the fifth circuit, after a hearing upon the evidence, denied the application and the petitioners appealed.

The question is whether the income taxes of these corporations should be assessed and collected in the first or in the fourth taxation division. Of these corporations the four first mentioned were incorporated under the joint stock company act of 1890 which requires (R. L., Sec. 2536) that the articles of association of such a company shall set forth, among other things, "the place of its principal office," and the articles of each of these four corporations provide that the principal office shall be in Honolulu, although they provide also that there may be branch offices elsewhere. The remaining four corporations, namely, the Hawaiian Sugar, Waimea, Princeville and Kilauea companies, were chartered under the former corporation law, which, so far as it remains in force, is found combined with the joint stock company act in chapter 157 of the Revised Laws, and which did not require a charter to state the place of the principal office of the corporation, but in the case of the Hawaiian Sugar Co. the charter does in fact state that the principal office of the corporation shall be at Honolulu. It does not appear from the evidence whether similar statements are made or not in the charters of the Waimea, Princeville and Kilauea companies, but we are informed by counsel that such a statement is contained in the charter of the Waimea Company, but not in that of the Princeville or of the Kilauea company. We presume that such a statement in a special charter, though not required by law, as is true also of many other statements found in special charters, would have the same effect as a similar statement in articles of association filed under a general law which requires such a statement, although it might be

nugatory (see *Milwaukee S. Co. v. City of Milwaukee,* 83 Wis. 590) if made in such articles filed under a general law which does not require such a statement.

All these corporations have practically all their property in the fourth taxation division and of course carry on their business there so far as actual production is concerned. Most books of original entry also are kept there. The majority of the directors and stockholders reside elsewhere. The directors' and stockholders' meetings are held in Honolulu in the first taxation division, except that the directors' meetings of the McBryde Sugar Co. are held in the fourth division and the directors' and stockholders' meetings of the Kilauea Sugar Co. are held in California. The minute books, stock books and various other books of a general nature are kept in Honolulu, the general financial transactions are conducted there and dividends are payable there, except that the minute books of the directors' meetings of the McBryde Co. are presumably kept in the fourth division, and all books and transactions of the kinds mentioned are in the case of the Kilauea Sugar Co. kept and performed in California, and the dividends of perhaps one or two of these corporations are payable in California, and perhaps also in the fourth division, as well as in Honolulu. The sugar produced by these corporations is sold through the Honolulu agents, except in the case of the Kilauea Sugar Co., whose sugar is probably sold through the agents in California, and the Princeville Plantation Co., which has ceased to produce sugar and whose income is derived principally from rentals of land cultivated in rice and from cattle raising.

The petitioners contend that the income tax is in effect a tax on property (*O. R. & L. Co. v. Pratt,* 14 Haw. 126), that the underlying principle of taxation in this Territory, as shown by the general property tax law (R. L., Ch. 98) is that all property shall be taxed where it is situated, that the income tax law (Id., Ch. 99) does not show clearly an intention to depart from that principle and that a clear showing should be made in order to take the case out of the general rule; also that, if such gen-

eral rule is held not to apply to income taxes, such taxes should be assessed and collected either at the corporation's principal place of business or, if at the place of its principal office, that such place should be regarded under the evidence in these cases, as being in the fourth taxation division. The respondents contend that the income taxes of a corporation should be assessed and collected where it resides, that the residence of a corporation is the place where it has its principal office and performs its general financial transactions, that the statement in its charter or articles of association of the place of its principal office is conclusive evidence that that is its residence; also that, if such is not the case, still the evidence shows that the principal offices of the corporations in question are at Honolulu in the first taxation division.

The income tax law provides (R. L., Sec. 1282) that every corporation subject to the tax shall make its return "to the assessor of its tax division." Which is its tax division? Is it the division in which most of its property is located and most of its business, other than the direction of its management and its financial affairs, is conducted, or the division in which it has its principal office, its meetings, its stock books, and in which it directs the management of its property and performs its general financial transactions? If the tax were strictly a property tax and there were no statutory provision on the subject, doubtless the real property would be taxable at its situs, and the personal property at the residence or domicil of its owner. But not only is an income tax not strictly a property tax, although for some purposes it is such in effect, but the place at which it shall be assessed is a proper subject of statutory enactment, and in the next section (1283) the legislature has expressly provided where the returns shall be made. This section provides that "It shall be the duty of all persons * * * and of all corporations made liable to income tax to make and render a list or return * * * to the assessor of the *division in which such persons or corporations reside, locate or do business* of the amount of their or its income, gains and profits as aforesaid;.

and all guardians, trustees, executors, administrators, agents, receivers, and all corporations or persons acting in a fiduciary capacity, shall make or render a list or return as aforesaid to the assessor of the *division in which such person or corporation* acting in a fiduciary capacity *resides or does business* of the amount of income, gains and profits of any minor or person for whom they act," etc. This section controls the preceding section by making the place of residence or of business the place of taxation,—very much as section 1227 of the general property tax law controls section 1226 by making the situs of property, both real and personal, the place of taxation. It is clear that section 1283 prescribes for income taxes a different rule from that of the situs of the property so far as natural persons are concerned, and we cannot discover in this section any intention on the part of the legislature to make the rule in regard to corporations or artificial persons different from that as to natural persons. There is no inherent reason why there should be any difference in this respect. Corporations as well as persons may reside in one place and do business or own property in another place or in several different places; and in this section persons and corporations are associated without any distinction, and not only that, but both persons and corporations acting in a fiduciary capacity are required to make their returns where they reside or do business irrespective not only of the place where their beneficiaries reside or do business but of the place where the property producing the income is situated. Nor can the contention be sustained that the words "reside, locate or do business" should be distributed so as to make the word "reside" apply to persons and the words "locate or do business" to corporations, for the tax is imposed upon both persons and corporations residing without the Territory but doing business within the Territory as well as upon those residing within the Territory. The more appropriate distribution of these words, therefore, would be in general to apply the word "reside" to persons or corporations within the Territory and the words "do business" to persons or corporations doing business in the Ter-

ritory but not residing there, that is, to make all these words apply to both persons and corporations according as they can apply under various circumstances so as to cover all cases. See *Union Steamboat Co. v. City of Buffalo,* 82 N. Y. 351. Whether there might be circumstances that would require a different distribution of these words in any particular case, or whether the words in the first part of the section requiring returns to be made by persons and corporations where they reside or do business might under some circumstances be controlled by the latter part of the section requiring returns to be made by agents, etc. where they reside or do business are questions not presented in this case. The place of taxation is a matter of policy which is subject to change by the legislature. Whether, now that these taxes are to be divided between the Territory and the counties, the policy should be changed is a question with which we have nothing to do. The act which requires such division contains no suggestion of an intention to make such change. The inference that would naturally be made from nonaction on the part of the legislature is that, presumably knowing that such taxes have been assessed and collected in the first division ever since the enactment of the income tax law, it intended to allow that practice to continue or else overlooked the matter. Deciding then that the place for assessing the income tax in the case of a corporation is in general the place of its residence if that is in the Territory, and the place where it does business in the Territory if it does not reside in the Territory, the question remains, where do the corporations in question reside or do business.

All these corporations being Hawaiian corporations must be deemed to be residents of Hawaii. See *Galveston etc. Ry. v. Gonzales,* 151 U. S. 496. Therefore, in the case of the Kilauea Sugar Co. which alone has what perhaps might be considered its principal office without the Territory, and which has no office so far as appears from the evidence in the first taxation division or elsewhere in the Territory except in the fourth division, its residence must be held to be in the fourth taxation

division where its property is situated, its business conducted and its office kept in the Territory. Even if it could be considered as residing in California still its income tax would be assessable in the fourth divison under the alternative provision of the income tax law that it should be assessable in the division in which it does business.

In the cases of the other corporations the question is whether they reside in the fourth division where they hold and manage their property or in the first division where they hold their meetings, keep their stock books and other books of a general nature and perform their general financial transactions. As was said in *Guinn v. Ia. Cent. Ry. Co.*, 14 Fed. 323, "The 'principal place of business' is no test of residence, whether of a corporation or natural person. A natural person might reside in one state and have his principal, or, for that matter, his sole place of business in another state." In that case the statute provided that suit should be brought in the division in which the defendant had its residence and the court declined to transfer the case from the southern division of Iowa, in which service had been made on the corporation's agent, to the central division of the same state, in which the corporation had its principal place of business,—the fact that it had its principal place of business in one division not being deemed sufficient to show that its residence was not in another division. In *Middletown Ferry Co. v. Town of Middletown,* 40 Conn. 65, the corporation conducted its business of running ferry boats in the town of Middletown but held its stockholders' and directors' meetings and kept its books and papers, except such as were in daily use in carrying on its business in the town of Portland. The court held that Portland was its principal place of business and that it should be assessed there although the tax was a property and not an income tax and the statute provided that corporations should be taxed, not where they resided or where their principal office was, but where they had their principal place of business or exercised their corporate powers. The court said:

"We think it is clear that the principal place of the business of a corporation, or where it exercises its corporate powers, within the meaning of the statute, is where the governing power of the corporation is exercised; where those meet in council who have a right to control its affairs and prescribe what policy of the corporation shall be pursued, and not where the labor is performed in executing the requirements of the corporation in transacting its business. It may be true in the sense *'qui facit per alium facit per se,'* that a corporation may be said to exercise its corporate powers wherever its business is being transacted, but in this statute the expression is used in a stricter sense. It has reference to what is done directly by the corporation itself in the management of its affairs, and not to what is done by others in obedience to its requirements." In *State v. Tenn. Coal, etc. Co.,* 94 Tenn. 295; 29 S. W. 116, the corporation had officers in at least six different places; its directors met in New York City and its stockholders at Tracy City, Tennessee; its president's and secretary's offices were at Nashville, and its obligations were entered into and its cash deposits were mainly at that place. It was held that the domicil of the corporation was at Tracy City, inasmuch as its primary governing and controlling power was exercised there, and that it was therefore properly assessable there. In *Galveston etc. Ry. v. Gonzales,* supra, the court, after referring to previous decisions to show that a domestic corporation was a citizen and an inhabitant of the state in which it was incorporated and that none of such dicisions showed that where a state was divided into two districts a corporation should be treated as an inhabitant of each district of the state in which it does business or of any district other than that in which it has its headquarters or such offices as answer in the case of a corporation to the dwelling of an individual, said that it was compelled to determine the question of the domicil of a corporation under such circumstances either by resort to general principles or to local statutes, and that "in the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its *corporate* business is transacted, even though it may transact its most important business in another place," and that "if the corporation be created by the laws of a state in which there are two judicial districts, it should be considered

an inhabitant of that district in which its general offices are situated and in which its general business, as distinguished from its local business, is done," and that "the rulings of the state courts generally favor the position that a corporation can only be considered as resident in the jurisdiction in which its principal offices are located, though it may run a railway and have local agents in other jurisdictions." The court cited in support of this statement a number of state cases, including several relied on by the respondents in the present case, and cited as holding the contrary view several state cases, including one of those relied on by the petitioners in the present case. Other cases in which a contrary view is taken are *Tobin v. Chester etc. Co.*, 47 S. C. 390; 25 S. E. 283, and *Boyd v. Blue Ridge R. Co.*, 65 S. C. 328; 43 S. E. 817, in which the South Carolina court declined to follow the decision of the federal supreme court in the case above mentioned to the effect that a corporation had only one residence, namely, at the place of its principal office, for the purpose of being sued, and held that it might have residences for that purpose both there and in other places where it was doing business. Even if that were so with reference to service of process, it would not necessarily be so with reference to taxation. In *Frick Co. v. Norfolk etc. Co.*, 86 Fed. 725, it was held that where the place of the chief office of a corporation is not designated by its charter or the vote of its stockholders or directors it is where its stockholders and directors usually meet, and where it elects its officers and conducts its financial operations. See also cases there cited, and *Ford v. Stone*, 58 S. W. (Ky.) 373.

These cases would seem to be sufficient to show that the Waimea Sugar Mill Co. and the Princeville Plantation Co., Ltd., reside and are properly taxable under the income tax law in the first taxation division, even if their charters do not provide that the place of their principal office is Honolulu. There can be no doubt of this in the case of the Waimea Co. and, in our opinion, the same rule applies in the case of the Princeville Co. although a single individual apparently purchased all of its shares and now holds all but four of them, which he transferred to others for the purpose of complying with the laws, and although he resides in the fourth taxation division and there manages the corporation property much as he pleases. The evi-

dence shows that directors continue to be elected and hold their meetings in Honolulu and that more or less of the business of the corporation, as, for instance, the collection of some of its rents, is transacted in Honolulu.

There is stronger reason for holding the same way in the cases of the other five companies, namely, the Lihue, Koloa, Kekaha, McBryde and Hawaiian sugar companies, inasmuch as their articles of association or charters expressly provide that the places of their principal offices shall be in Honolulu. The case of the McBryde Co. cannot be distinguished from the others from the mere fact that its directors' meetings are held in the fourth division, and that seems to be the view taken in *State v. Tenn. Coal etc. Co.,* supra, even when the charter did not provide where the place of the principal office should be. In *Western Transportation Co. v. Scheu,* 19 N. Y. 408; *Oswego Starch Factory v. Dolloway,* 21 N. Y. 449; *Union Steamboat Co. v. City of Buffalo,* supra; *People v. Barker,* 34 N. Y. Supp. 269 and 36 *Id.* 844, and *Pelton v. Transportation Co.,* 37 Oh. St. 450, the New York and Ohio courts held that the statement of the place of the principal office in the articles or charter was conclusive even though the corporation should in that way establish its principal office in a place other than that in which it transacts most of its business for the express purpose of avoiding taxation. In *Transportation Co. v. Assessors,* 91 Mich. 382, and *Milwaukee S. Co. v. City of Milwaukee,* supra, the Michigan and Wisconsin courts disapproved the New York and Ohio decisions in so far as they held that the statement in the articles or charter was conclusive, and held that if the place of the principal office was so stated falsely and for the purpose of avoiding taxation it should not control, although those courts were not required to go to the extent of holding that the New York and Ohio decisions were wrong, for both the facts as to where the general business of the corporations was conducted and the specific requirements of the statutes were different in those cases. Neither of those courts intimated that if the articles or charter stated the place of the principal office

and the directors' and stockholders' meetings and stock books were kept and the general financial transactions of the company were performed in such place it would not be the residence of the corporation even though most of its property was located and most of its business conducted elsewhere.

Although we hold that on the evidence now before us the Kilauea Sugar Co. should have made its return in the fourth division, it does not follow that the assessor of the first division should be required to send the return of that company to the assessor of the fourth division, and he is under no legal duty to do so. The company should make its return to the assessor of the fourth division irrespective of whether it has made a return to the assessor of any other division. We, however, see no reason why the assessor of the first division should not voluntarily send the return to the assessor of the fourth division. Nor does it follow that a writ should issue to compel the assessor of the fourth division to assess or collect the income taxes of this company, for the petition itself, and the evidence also as far as it goes, shows that this company had no assessable income for the year in question, and the writ of mandamus may well be refused when its issuance would serve no useful purpose.

The respondents' contention that the county of Oahu is a necessary party is not sustained.

The order appealed from dissolving the alternative writ and denying the petition is affirmed.

*J. D. Willard,* county attorney of Kauai, *D. H. Case* and *Smith & Lewis* for petitioners.

*M. F. Prosser,* deputy attorney general, for respondents.