The Detroit Transportation Company v. The Board of Assessors of the City of Detroit.

*Taxes—Corporations—Principal office.*

1. The term "for business," used in Act No. 24, Laws of 1867, entitled "An act to authorize the formation of corporations for the purpose of engaging in commerce or navigation," and which provides that the articles of association of corporations organized thereunder shall state "the city or town and county in this State where their general office for business is located," is used in its ordinary significance, and refers to the business in which the corporation is engaged.

2. The statement in the articles of association of such a corporation of the place where its office for business is located is not conclusive against the State for the purposes of taxation.

3. A corporation must have a local habitation. It cannot fix a nominal domicile in the country while its actual domicile for business is in the city; and its local existence must be held to be in some place in the State where its business is carried on.

4. The citizen has a right to reside in the country and do business in the city, but this must be an actual residence. One cannot maintain a nominal residence in the country while his actual residence is in the city, and thus avoid taxation in the city.

*Mandamus.* Argued April 12, 1892. Denied April 15, 1892.

Relator applied for *mandamus* to compel respondent to remove its name from the assessment roll. The facts are stated in the opinion.

*Wells, Angell, Boynton & McMillan,* for relator.

*F. A. Baker,* for respondent.

Per Curiam. The petition in this case sets forth that the relator is a Michigan corporation, organized under "An act to authorize the formation of corporations for

the purpose of engaging in commerce or navigation," and acts amendatory thereof; that its articles of association are duly filed and recorded; that its general office for business is located in the township of Hamtramck; that its amended articles of association contain the following:

" The office for the transaction of the business of the said corporation shall be in the township of Hamtramck, in the county of Wayne, and State of Michigan."

That it owns four vessels engaged in the transportation of iron ore, chiefly to the ports of Lake Erie, but that occasionally cargoes of iron ore have been carried to the ports of Detroit and Wyandotte; that in February, 1892, it entered into a contract at Cleveland, Ohio, with parties residing there, for the employment of its vessels in transporting ores during the entire season of 1892 between ports of Lake Superior and Lake Erie; that it hires and maintains a general office for business in said township of Hamtramck, which place bears the sign of petitioner, and that all of its stockholders' and directors' meetings are held at said office; that it has no general office for the transaction of business, or other office whatsoever, in the city of Detroit, and that no sign of petitioner is exhibited anywhere in said city; that the business of securing cargoes for the current year will be transacted by its agents in the Lake Erie ports; that cargoes for prior years have been secured in the same way; that its agents are paid commissions for their services; that the moneys earned are, as a rule, collected at the several places where they become due; that it has no property in the city of Detroit; that its books of account are kept at the general offices of the Michigan Car Company, in the city of Detroit; that petitioner is charged a nominal sum per year on account of the expense of said book-keeping; that its earnings are paid

to William K. Anderson, of Detroit, who is its treasurer, and who pays its bills, and accounts to it at its annual meeting in the township of Hamtramck; that it was taxed in the years 1890 and 1891 in the township of Hamtramck upon the value of its vessels; that its manager resides in Detroit, but has no office therein as such manager; that his business consists in keeping its vessels running and in repair, and is nearly all transacted elsewhere; that the respondent has placed its property upon the assessment roll of the city of Detroit for the purpose of taxation; and prays for the writ of *mandamus* to compel the respondent to remove its name from the assessment roll.

The respondent admits the due incorporation of relator, and the statement as to the location of its office in its articles of association. It alleges that the original and the first amended articles of association of relator declared the general office for the transaction of its business to be located in the city of Detroit; that the amendment changing such office to Hamtramck was not made in good faith, and is not true in point of fact; that its general office for the transaction of its business has always been, and still is, in the city of Detroit; that prior to 1891 relator pretended to have an office on Jefferson avenue, in the township of Hamtramck, at the residence and place of business of one Vorhees, a few rods from the margin of the Detroit river; that said Vorhees kept a place commonly known as a "road-house," frequented by gentlemen who go out riding, and desire to stop at a place where their horses may be properly taken care of; that said Vorhees is a trainer and driver of trotting horses; that on one end of the stoop of the house of said Vorhees the relator had a small tin sign, with its corporate name marked thereon; that relator never did any business there as a corporation; that

its officers and managers did no corporate business there, except possibly the stockholders met there, or pretended to meet there, for the election of officers; that respondent is informed that the stockholders of relator never met at said road-house in a corporate meeting, but have upon some occasions ridden by said road-house in a street-car, and held their meeting in a street-car while traveling through that part of the township of Hamtramck; that in 1891 the Legislature enlarged the corporate limits of the city of Detroit by adding to it all that part of the township of Hamtramck lying between the city of Detroit and the township of Grosse Pointe, and certain other territory; that by this act the whole of said Jefferson avenue, upon which said road house was located, became one of the streets of the city, and all the river property situated in said township became a part of the city; that all that is left of the township of Hamtramck is a tract of country lying east of Woodward avenue and north of the city of Detroit, in which there is no river property, and no navigable water, and is wholly occupied by farms and gardens; that relator has removed its sign from said road-house, and taken it to a farm-house owned by David Whitney, and situated on Chene street in the present township of Hamtramck, and pretends to have its office there; that said company has never done any corporate business at said farm-house, and, in the nature of things, can do no business there; that all its stockholders are residents of the city of Detroit, and do business in the city; that all its officers and agents reside and do business in the city; that the books of said company are kept in the city; that it receives and pays out its money in the city; that respondent is not informed whether its stockholders have ever met at said farm-house, but that, aside from a meeting

91 MICH.—25.

of the stockholders, all its business is transacted in the city; that James W. Millen, of the firm of Parker & Millen, of the city, is its general manager and chief executive officer; that they have an office at 15 Atwater street, in the Second ward of the city, with a frontage on Detroit river, a telegraph office, and all conveniences necessary for the transaction of any business connected with the navigation and commerce of the Great Lakes; that its vessels are enrolled under the laws of the United States in the custom-house in the city of Detroit; that its vessels are generally laid up during the winter at the city of Detroit; avers that the principal office of relator within the meaning of the law is located in the city of Detroit; that its vessels are taxable there; and insists that a writ of *mandamus* is not the appropriate remedy for relief against the assessment.

On account of the necessity of an immediate disposition of the question for the interests of the public, we are disposed to waive the objection that the writ of *mandamus* is not the proper remedy, and dispose of the case upon its merits.

The act under which relator is organized provides that its articles of association shall state—

"The city or town and county in this State where their general office for business is located."

Section 4 of the tax law of 1891 provides:

"All corporate property, except where some other provision is made by law, shall be assessed to the corporation as to a natural person in the name of the corporation. The place where its principal office in this State is situated shall be deemed its residence."

The relator claims that the location of its office is a question of law, and that the articles of association are conclusive on this point, and that as a matter of fact it

has no other office than the one in Hamtramck. In support of this view we are cited to *Transportation Co. v. Scheu*, 19 N. Y. 408; *Starch Factory v. Dolloway*, 21 Id. 449; *Steam-Boat Co. v. Buffalo*, 82 Id. 351; *Pelton v. Transportation Co.*, 37 Ohio St. 450.

In *Transportation Co. v. Scheu* the tax law of New York provided that—

"All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be."

The act under which the plaintiff in that case was organized provided that a certificate should be filed in the office of the clerk of the county in which the principal office for the management of the business of the company should be situated, and that it should state "the name of the city or town and county in which the principal office for managing the affairs of such company is to be situated," and should also keep its stock-books at the place designated in the certificate. The articles of association in that case fixed the office of the corporation at the village of Tonawanda, where the stock-book of the company was kept, and the directors held regular monthly meetings, and one clerk was employed and kept at the office, while an office was maintained in Buffalo, at which the president, secretary, and treasurer of the company chiefly did their business. It will readily be seen that the facts in that case and the statute are different from those in the present case.

In *Starch Factory v. Dolloway* the plaintiff was a manufacturing corporation, with its manufacturing establishment located, and its business carried on, in the city of Oswego. The books were kept at the treasurer's office at Auburn, and its general financial affairs were transacted there. The certificate was required to state—

"The names of the town and county in which the operations of the company are to be carried on."

The tax law provided:

"All the personal estate of every incorporated company liable to assessment on its capital shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be; but, if such company have no principal office or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on."

It was also said in this case that the certificate under which the plaintiff was organized—

"Was intended to serve the same purpose as the declaration usually contained in special acts of incorporation, in which it was stated that the business was to be carried on in a particular town or city. The location established by the certificate could not be changed at the pleasure of the directors or trustees any more than the corporate name, the period of existence, or the objects for which the company was formed, or the amount of its capital stock."

The plaintiff was taxed in Oswego, and the assessment there was sustained, notwithstanding that its principal office for the transaction of its financial concerns was in Auburn.    A distinction is drawn in that case between manufacturing corporations and transportation companies, whose business could not generally be carried on in a single local jurisdiction.   These cases are distinguishable in their facts, as well as in the statute governing them, from the present case.

It must be conceded that *Steam-Boat Co. v. Buffalo* goes to the full extent of the claim of the relator in this case.

In the case of *Pelton v. Transportation Co.* the statute of Ohio differs from ours, in that it does not require the articles of association to state that the principal office of

the company to be designated is its office "for business." In that case the office was located at the residence of the vice-president of the company, who was its specially authorized agent. In other respects it does not differ in its facts from the present case.

It is undoubtedly true that one may select or change his residence with a view to taxation. The citizen has a right to reside in the country and do business in the city. This, however, must be an actual residence. One cannot maintain a nominal residence in the country while his actual residence is in the city, and thus avoid taxation in the city. A corporation possesses the same right in this respect that the individual does. A corporation must have a local habitation. It cannot fix a nominal domicile in the country while its actual domicile for business is in the city. If the relator's position is correct, it could as well locate its office for business at a farm-house in some town in the interior of the State as in Hamtramck. It has no business in Hamtramck, and, in the very nature of things, can have none. None of its property is situated there. The term "for business," used in the statute, cannot be limited to so narrow a construction as to say that it means simply the annual meeting of the stockholders or meetings of directors. It must be held that the Legislature used the term in its ordinary significance, and intended it to refer to the business in which the corporation was engaged.

This is a Michigan corporation. Its local existence must be held to be in some place in the State where its business is carried on.

In so far as the authorities above cited hold that the statement in the articles of association is conclusive against the state for the purposes of taxation, we cannot follow them. The result would be to permit a corporation to have a merely nominal residence in one place,

while its actual residence is in another, and thus give to it a privilege which is denied to individual citizens.

For the purposes of this case the answer must be taken as true, and from that it appears that the only office for business which the relator has in this State is in the city of Detroit. The statement in its articles of association will undoubtedly estop relator to say that that is not its residence for certain purposes, such as filing chattel mortgages and services of process; but where it is apparent that the sole purpose is to avoid taxation, and that no office for business, within the meaning of the law, is kept at the place mentioned in its articles, the municipality where its real office for business is kept may assess and tax its personal property.

The writ must be denied.

LONG, J., did not sit.