## GUTERMAN v. RICE et al.
### No. 3664.

Circuit Court of Appeals, First Circuit.
June 23, 1941.

Harold Horvitz, of Boston, Mass. (Sidney J. Kagan, Milton C. Wasby, and Guterman & Guterman, all of Boston, Mass., on the brief), for appellant.

Arthur P. Stone, of Boston, Mass., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The appeal here is from an order of the District Court affirming the order of the

referee in bankruptcy. The only question is whether a chattel mortgage was properly recorded in accordance with the provisions of Massachusetts General Laws (Ter.Ed.) Chapter 255, Section 1, and is valid and legally binding as against the trustee in bankruptcy.

The Rice Chocolate Company, the bankrupt corporation, was organized in 1914 under the provisions of Chapter 156 of the Massachusetts General Laws (Ter.Ed.). In its agreement of association it gave the location of its principal office as Boston, as required by the provisions of Section 6, of said chapter. It transacted its business in Boston until 1925 when it transferred its business activities to Everett, Massachusetts. The change in location of the corporation's principal office was never authorized by vote of its stockholders nor were any articles of amendment setting forth that the location had been changed ever filed. The record book of the corporation was at all times kept in Boston, at the office of counsel for the corporation. The stockholders and directors held meetings at various places, including Boston, Cambridge and Belmont and no meetings ever took place in Everett. The corporation never again opened any office in Boston after its removal to Everett in 1925, and by January 1, 1926, it had given up every place of business and business activity in Boston and had no mailing address, no telephone listing, no salesroom, no factory and no property whatever in Boston. In each of the twelve annual certificates of condition which were filed with the Commissioner of Corporations since 1926 it was stated that its principal office was in Everett. It twice issued capital stock and stated that it was located at 7 Charlton Street, Everett. It amended its articles of association when it increased its capital stock and later when it reduced its capital stock, stating at all times that it was located in Everett. All papers thus filed were approved by the Commissioner of Corporations. When it went into Rhode Island to do business it there stated that it was of Everett, Massachusetts. It amended its by-laws and stated that "The principal office of the corporation shall be located in Everett".

The chattel mortgage which is the subject of consideration in this appeal was executed by the corporation on November 1, 1934 to the Old Colony Trust Company of Boston, who assigned it to the appellees,

trustees under an indenture of trust dated November 1, 1934. It was recorded in Everett but not in Boston. On February 23, 1939 the corporation was adjudicated a bankrupt and later the trustee in bankruptcy petitioned to have the mortgage declared invalid.

The referee held that the mortgage was properly recorded in accordance with the provisions of Massachusetts General Law (Ter.Ed.) Chapter 255, Section 1, and is valid and legally binding against the trustee in bankruptcy. On the trustee's petition for review of this order the district court held that the failure to record the mortgage in Boston did not render the mortgage void and affirmed the referee's action in upholding it as valid. The trustee has appealed from this order and decree of the district court. He contends that because of the failure of the corporation to change the location of its principal office by formal amendment and subsequent recording of the same with the Secretary of State, its residence remained in Boston as it was originally stated, and that the mortgage is invalid as against him because it was not recorded in Boston.

We agree with the trustee, though the case is not without considerable difficulty. It is unfortunate that the Supreme Judicial Court of Massachusetts has never had occasion to pass upon the meaning of the word "resides" as used in the chattel mortgage recording act when applied to domestic corporations, nor to establish the effect of the Massachusetts corporation law in the circumstances here presented. Before venturing to state the Massachusetts law in these unusual circumstances, we have made an exhaustive survey of the authorities and have reached the conclusion that for the purposes of the recording of chattel mortgages in Massachusetts the residence of a domestic corporation is at the place of its principal office as designated in its articles of agreement or amendments thereto duly voted, certified and filed according to law.

The question presented to us is a pure question of law: What is the residence of a domestic corporation for purposes of the chattel mortgage recording act? However sympathetic one may be toward the unfortunate position of one or the other party, it is perfectly clear that if, according to law, the residence of the Rice Chocolate Company was in Boston at the time of

the recording of this chattel mortgage, the mortgage must be invalid as between third parties for lack of proper recording. Alexander v. F. L. Smithe Machine Co., 1924, 248 Mass. 436, 143 N.E. 321; Connecticut Valley Onion Co. v. Pielock, 281 Mass. 287, 290, 183 N.E. 526.

The chattel mortgage recording statute requires the recording of a chattel mortgage in two places, i. e., the mortgagor's residence, and his principal place of business.[1] There is no question but that Everett is now the actual principal place of business of the mortgagor corporation. Regardless of whether Boston was the formal residence of the corporation, Everett was one of the places where the mortgage had to be filed.

It has been urged upon us that "residence" is a very flexible word and has different meanings depending on the sort of statute in which it is used. Cambridge v. West Springfield, 1939, 303 Mass. 63, 67, 20 N.E.2d 432, 434; Wachusett National Bank v. Fairbrother, 1889, 148 Mass. 181, 19 N.E. 345, 12 Am.St.Rep. 530. It is necessary for us to decide its meaning when used in a statute designed primarily to give notice of mortgages to creditors of the mortgagor. The statute in question provides two places where a prospective creditor can look to see if the mortgagor has given any chattel mortgages: the mortgagor's residence and his principal place of business. If they coincide there need, of course, be only one recording.

■ It is well established that the residence of a domestic corporation is at the location of its principal office unless a statute directs otherwise. Fairbanks Steam Shovel Co. v. Wills, 1916, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; Wood v. Delaware & H. R. Corp., 2 Cir., 1933, 63 F.2d 235; State ex rel. Stanton v. Zangerle, 117 Ohio St. 436, 159 N.E. 823. In Massachusetts, as in many other states, a domestic corporation is required to state in its Articles of Agreement the location of its principal office.[2] Statutory provision is made for changing the location of this principal office[3] and for having such change certified and recorded.[4] No attempt was made by the bankrupt corporation to comply with the mandatory provisions for changing the location of its principal office.

■ It is true that from 1926 on, the corporation filed annual certificates of condition with the Commissioner of Corporations in which it was stated that its principal office was in Everett. It also twice amended its articles of organization when it increased and reduced its capital stock and stated that it was located in Everett. These amendments were accomplished pursuant to Mass.Gen.Laws (Ter.Ed.) c. 156, §§ 41, 43, supra, and show that the corporation was fully cognizant of the contents

[1] Mass. Gen. Laws (Ter. Ed.) c. 255: "Section 1. Mortgages of personal property shall * * * be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the town where he then principally transacts his business. * * * The mortgage shall not be valid against a person other than the parties thereto until so recorded; * * *."

[2] Mass. Gen. Laws (Ter. Ed.) c. 156: "Section 6. * * * The agreement of association shall state:
*   *   *   *   *   *
"(c) The location of the principal office of the corporation in the commonwealth * * *."

[3] id. "Section 41. Every corporation may, at a meeting duly called for the purpose, by the vote of a majority of all its stock * * * authorize an increase or a reduction of its capital stock * * * may authorize a change of the location of its principal office or place of business in this commonwealth or a change of the par value of the shares of its capital stock, or may authorize proceedings for its dissolution * * *."

[4] id. "Section 43. Within thirty days after any meeting at which any amendment or alteration of the agreement of association or articles of organization has been adopted, articles of amendment, signed and sworn to by the president, treasurer and a majority of the directors, setting forth such amendment or alteration and the due adoption thereof, shall be submitted to the commissioner [of corporations], who shall examine them with the same powers as in the case of the original articles of organization, and, if he finds that they conform to the requirements of law, shall so certify and endorse his approval thereon. Thereupon the articles of amendment shall * * * be filed in the office of the state secretary. No such amendment or alteration shall take effect until such articles of amendment shall have been filed as aforesaid."

and requirements of those sections. It amended its by-laws to provide that the principal office of the corporation should be located in Everett, but they cannot take effect as a proper amendment of its Articles of Association since no showing was made that this was done by a vote of the majority of the stockholders as required by Section 41, supra, or certified by the Commissioner of Corporations and recorded with the Secretary of State as required by Section 43, supra. Cf. Brown v. Little, Brown & Co., 1929, 269 Mass. 102, 168 N.E. 521, 66 A.L.R. 1284. Until these acts are done, the statute is explicit that no amendment shall be effective.

To hold that a domestic corporation can effectively change its legal residence without complying with the mandatory provisions of the Corporation Law is to make the applicable provisions of that law meaningless. Though the Supreme Judicial Court of Massachusetts has never squarely passed upon the effect of noncompliance with the provisions of Section 43 where the rights of creditors are involved, there are indications in its opinions dealing with that section that it considers it to have been enacted for the benefit of creditors. See Mitchell v. Mitchell, Woodbury Co., 1928, 263 Mass. 160, 164, 160 N.E. 539, 540; Cunningham v. Commissioner of Banks, 1924, 249 Mass. 401, 420-422, 433, 144 N.E. 447, 456, 461; cf. Commerce Trust Co. v. Chandler, 1 Cir., 1924, 295 F. 241; Franks v. Franks Bros. Co., 1930, 271 Mass. 70, 73, 170 N.E. 810, 811. We believe the statutory requirement that the location be stated in the articles of association and the specific provisions for change and for the recording of the same were for the purpose of fixing a definite legal residence of the domestic corporation within the Commonwealth about which there could be no question. The articles of association were to be conclusive as to this residence, at least for purposes necessitating a definite fixed place where creditors or the general public could have the assurance of finding recorded that information which the legislature has determined they are entitled to have, and no change was to be effective until made pursuant to the statute. Cf. Gorman v. A. B. Leach & Co., D.C.E.D.N.Y.1926, 11 F.2d 454; State ex rel. Northwestern Land & Colonization Co. v. District Court, 1921, 191 Iowa 244, 182 N.W. 211; State ex rel. Juvenile Shoe Corp. v. Miller, 1925, 217 Mo.App. 16, 272 S.W. 1066; People v. Barker, N.Y.Sup.Ct.1895, 87 Hun 341, 34 N.Y.S. 269, affirmed, 1895, 147 N.Y. 715, 42 N.E. 725; State ex rel. Harrington v. Vincent, 1927, 144 Wash. 246, 257 P. 849; First National Bank of Everett v. Wilcox, 1913, 72 Wash. 473, 130 P. 756, 131 P. 203. See Detroit Transportation Co. v. Board of Assessors, 1892, 91 Mich. 382, 390, 51 N.W. 978, 980; 8 Fletcher, Cyclopedia Corporations (Rev. ed. 1931) § 4048. But cf. State ex rel. Howard Cole & Co. v. Circuit Court, 1922, 178 Wis. 89, 189 N.W. 259.

Nor is there any weight to the argument that there was substantial compliance with Sections 41 and 43. The referee found that no amendment had been filed but that "However, everything else that could possibly have been done to change its principal office was done prior to the date of recording the mortgage in question". Everything else that could possibly have been done—except what the statute required—may have been done. But there was no attempt to comply with the statute. Not only was there not substantial compliance, there was not even a pretence of compliance though the corporation must have known of the requirements of Sections 41 and 43. In such a situation, the doctrine of Brown v. Little, Brown & Co., supra, is not applicable. It is our opinion that the bankrupt corporation did not legally change its principal office from Boston to Everett since it did not comply with the statutory requirements for such change.

We are supported in our opinion as to the invalidity of the mortgage by the cases of Fairbanks Steam Shovel Co. v. Wills, supra, and Sweeny v. Keystone Driller Co., 1930, 122 Ohio St. 16, 170 N.E. 436, 437; 16 Va.L.Rev. 846. The latter case is squarely in point. The insolvent corporation stated in its articles of incorporation that its principal office was in Franklin County, Ohio. This was never changed according to law, though two years after its incorporation the corporation moved to Cuyahoga County and had no business or property in Franklin County. The next year a chattel mortgage given by the corporation was recorded in Cuyahoga County but not in Franklin County under a statute requiring recording in "the county where the mortgagor resides at the time of the execution thereof". The mortgage was held to be improperly recorded since the residence of the corporation was still

in Franklin County as the corporation had not amended its articles according to the statute.

In Fairbanks Steam Shovel Co. v. Wills, supra [240 U.S. 642, 36 S.Ct. 467, 60 L. Ed. 841], the United States Supreme Court invalidated a chattel mortgage, as against creditors, in circumstances strikingly similar to those in the instant case. The chattel mortgage recording act in Illinois required recording in "the county in which the mortgagor shall reside at the time when the instrument is executed and recorded." The mortgagor corporation was organized in 1905. The organizers filed a statement with the Secretary of State of Illinois, as required by law, that the principal office of the proposed corporation was to be Chicago, Cook County. The Secretary of State authorized the incorporators to open the books for stock subscriptions. When the subscriptions were complete, the corporation filed a statement setting forth the post-office address of its principal business office as Beardstown, Cass County. The Secretary of State then issued a certificate that the corporation was duly organized. No formal attempt was made to change the principal office as set forth in the original statement, though the corporation law had elaborate provisions for such change and for filing of such change with the Secretary of State. It is significant that the second statement that the principal office was in Beardstown was made even before the corporation was certified to be organized. The Supreme Court stated that "An office was nominally maintained in Chicago, but no records or books of account were kept nor any business transacted there. So far as the practical conduct of the business was concerned, and to all outward appearances, the principal office was in Beardstown. But no change of 'the place of business' was made in the manner prescribed by the statute". A chattel mortgage was given in 1912, seven years after the corporation had "moved" to Beardstown, and was recorded in Cass County but not in Cook County. The Supreme Court held the mortgage invalid since it was not registered at the residence of the mortgagor, which was its principal place of business, conclusively established by its articles of incorporation. It further held that informal change of the location of the principal office was ineffective.

The mortgagee contends that the case is distinguishable on the ground that the Supreme Court stated that the mortgagor nominally maintained an office in Chicago. It is true this statement was made by the court, but the lower court decision, In re Federal Contracting Co., 7 Cir., 1914, 212 F. 688, 691, shows that the special master found that "after a short time no office was maintained in Chicago" and that this was the basis on which the Circuit Court of Appeals found the mortgage invalid. Its judgment was affirmed by the Supreme Court, and there is not the slightest indication why the latter court made the statement that it did nor that it laid any emphasis at all on the maintenance of a nominal office. We do not think that the opinion lends itself to the interpretation that a different result would have been reached had the facts been stated exactly as in the court below. Laying aside that untenable distinction, the facts are extremely similar to the facts here involved. If anything, the facts there were stronger for the validity of the mortgage since the corporation had never actually done any business in Chicago while in the instant case the mortgagor resided for eleven years both in fact and in law in Boston. We consider the case strong authority for the appellant's position.

It is suggested that the case is no longer in good repute and should not be followed. However, it has often been cited for the broad proposition that the residence of a corporation is the place designated in its articles of incorporation, particularly in cases involving the recording of chattel mortgages. E. g., Babcock & Wilcox Co. v. Spaulding, 1 Cir., 1936, 86 F.2d 256, 258; Brandes v. Barber, 8 Cir., 1926, 13 F.2d 65, 66; The Underwriter, D.C.E.D. N.Y.1925, 3 F.2d 483, 485; see 8 Fletcher, Cyclopedia Corporations, op. cit., at § 4048; 2 Jones, Chattel Mortgages and Conditional Sales (1933) § 253. It was also cited by the Supreme Court in Newark Fire Ins. Co. v. State Board, 1939, 307 U.S. 313, 318, 59 S.Ct. 918, 83 L.Ed. 1312. We do not consider that the cases cited by the mortgagee, holding that a foreign corporation may acquire sufficient residence for various purposes in a state other than that of its incorporation, throw any uncertainty on the clear decision of the Fairbanks Shovel Co. case.

The mortgagee contends that the law of Massachusetts is that the residence of a corporation is at its principal place of business in fact and not the place stated as

such in its unamended articles of association. We have already expressed our opinion that the law of Massachusetts provides that the location of the principal office as stated in the articles is controlling on "residence" until properly changed by compliance with the mandatory provisions of the statute. If "residence" is read as synonymous with the de facto principal place of business then the recording statute contains a redundancy in requiring that the chattel mortgage be recorded both where the mortgagor resides and where the mortgagor "then principally transacts his business". Cases stating the rule as to the residence of individuals have no application as individuals are free to move about at will while a domestic corporation can be required to fulfill certain statutory requirements or may be given a fixed legal residence for certain purposes.

■ The mortgagee particularly relies on a dictum in Parker v. Proprietors of Cemetery of Mt. Auburn, 1914, 217 Mass. 286, 104 N.E. 750, at page 752, where the Supreme Judicial Court of Massachusetts said: "It often has been held respecting a business corporation that its residence is in the place where its manufacturing, mercantile or other chief activities are carried on, and not where only its corporate or directors' meetings are held or its records are kept." It also relies on Federal Trust Co. v. Bristol County Street R. Co., 1914, 218 Mass. 367, 105 N.E. 1064. Neither of these cases dealt with the question here in issue. In neither of them did the statute require the articles to state the location of the principal office or provide for changing the same. The Mt. Auburn Cemetery case involved the taxation of a special type of non-business corporation organized under a special act. There was no occasion to pass upon the conclusiveness of a required statement of location, and an examination of the brief for the cemetery, at page 14, shows that this distinction was recognized in the statement that "In many states the statutes require the principal place of business of corporations to be stated in the original articles of incorporation, and it is generally held that in such cases the articles are conclusive". The cases cited by the court in the Mt. Auburn Cemetery case all deal with attempts to evade taxation by establishing a formal residence apart from the actual principal place of business. Whatever may be the law of Massachusetts as to the residence of domestic corporations attempting to evade taxation by such means, we do not consider the same considerations to control in fixing the residence of a corporation for the purpose of recording chattel mortgages. This was expressly recognized in Detroit Transportation Co. v. Board of Assessors, supra, cited by the court in the Mt. Auburn Cemetery case.

Nor is the Federal Trust Co. case helpful since in that case a street railway was only required to state in its articles the towns through which its lines were to run. This was done and the mortgage filed in those towns. The master found as a fact that Boston was not the mortgagor's principal place of business, and since the corporation had never stated that it was, it was correctly decided that recording in Boston was unnecessary.

We consider it very unfortunate that it is necessary for a federal court first to construe these vital Massachusetts statutes. We also consider it unfortunate in these circumstances that the mortgage must be held invalid. However, if Sections 41 and 43 of the corporation law are to have any meaning it is necessary to hold that the principal office of a domestic corporation is that stated in its articles until duly amended and recorded, and that this constitutes its residence within the meaning of the chattel mortgage recording statute.

The corporation actually resided in Boston for eleven years. If the corporation law is not interpreted as we read it, at what time did the corporation move its "residence" to Everett? According to its articles its principal office is Boston. Would not a creditor, shortly after the removal to Everett, be entitled to rely on those articles as fixing the residence of the corporation and consider the Boston record a proper place to search for a chattel mortgage? At what time would he not be so entitled? Our decision has at least the advantage of providing one definite and certain place where a creditor may always look for the recording of a corporate chattel mortgage, i. e., the town in which the principal office is located as designated by the original articles of association or amendments thereto duly adopted, certified and recorded. Since the mortgage in this case was not recorded at the residence of the corporation as fixed by its principal office designated in its unamended articles of association, the mortgage is invalid as against the trustee in bankruptcy.

The order of the District Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.

