**In the Matter of CARMICHAEL ENTERPRISES, INC., Bankrupt.**

**No. 66007.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 10, 1971.

King & Spalding, Atlanta, Ga., for plaintiff.

Morton P. Levine, Levine, D'Alessio & Cohn, Atlanta, Ga., for defendant.

ORDER

MOYE, District Judge.

By reason of its jurisdiction over bankruptcy proceedings in this district, this Court must now decide a question of state commercial law which has never

been decided by the Georgia courts. At issue is the construction of the filing provisions of the Georgia Uniform Commercial Code, Ga.Code Ann. § 109A–9–401. As the statutory provision involved is part of a uniform law, the statute itself and decisions from other Uniform Commercial Code jurisdictions provide the basis for disposition of the question at issue. A statement of the facts and specific issues follow.

The issue arises in a petition to review the decision of Referee in Bankruptcy in which Union Camp Corporation and Trust Company of Georgia were denied the status of secured creditors of the bankrupt, Carmichael Enterprises, Inc. The question common to the claims of both parties is whether their financing statements were properly filed in accordance with the requirements of Ga.Code Ann. § 109A–9–401. An additional question is whether or not Union Camp obtained from the bankrupt a "security agreement" as that term is defined in Ga.Code Ann. § 109A–9–105(1) (h). The findings of fact of the Referee, which are adopted by this Court, follow.

The bankrupt, Carmichael Enterprises, Inc., was incorporated on November 30, 1962, by the Superior Court of Fulton County, Georgia, its charter stating that county to be the site of its "principal office." On March 15, 1968, the bankrupt executed a note, security agreement and financing statement to the Trust Company of Georgia in the sum of $250,000. On March 21, 1968, Trust Company filed its financing statement in the Office of the Clerk of the Superior Court, Gwinnett County, Georgia. On January 24, 1969, Union Camp Corporation, pursuant to an alleged security agreement with the bankrupt,[1] filed a financing statement in the Office of the Clerk of the Superior Court, Gwinnett County, Georgia. At the time the financing statements of Trust Company and Union Camp were filed, the bankrupt maintained its *only* business operation in Gwinnett County, Georgia. On February 10, 1969, the bankrupt filed an amendment to its corporate charter in the. Superior Court of Gwinnett County, Georgia, in which amendment the "principal office" was changed to Gwinnett County. Upon consideration of the briefs of both parties and the pertinent authorities, the Referee concluded that the proper place for filing the financing statements under Ga.Code Ann. § 109A–9–401 was the "principal office" as designated in the Certificate of Incorporation (Fulton County at the time the financing statements were filed) and not the factual principal place of business (Gwinnett County).

### PROPER PLACE TO FILE

Ga.Code Ann. § 109A–9–401 provides, in pertinent part:

"(1) The proper place to file in order to perfect a security interest is as follows: (b) * * * [W]hen the debtor is * * * a corporation, * * * in the county of the debtor's principal place of business in this State * * *." The narrow question before the Court is the meaning of the term "principal place of business" for purposes of the filing requirements of the statute.

In light of the alternative filing provisions suggested by the drafters of the Uniform Commercial Code,[2] it seems

---

1. The question of whether or not Union Camp obtained a valid "security agreement" from the bankrupt is discussed below.

2. *"First Alternative Subsection (1)*
"(1) The proper place to file in order to perfect a security interest is as follows:
(a) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(b) in all other cases, in the office of the [Secretary of State].
*"Second Alternative Subsection (1)*
"(1) The proper place to file in order to perfect a security interest is as follows:
(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the ........ in the county of

evident that an underlying purpose of the Georgia provision is the establishment of a purely local filing system. To allow the "principal office" as stated in the Certificate of Incorporation to serve as the proper place for filing would appear to contradict this purpose: each filer, or searcher, in order to fully insure his compliance with Section 109A–9–401, would have to search a central filing place at the outset, the Office of the Secretary of State where corporate records are maintained. Such requirement would virtually frustrate the purpose of the legislature in establishing a purely local filing system. Thus, one would have to contact the Secretary of State initially to determine the debtor's principal place of business, but there is no assurance that the "correct" information would be given the inquiring creditor. Attached to petitioner's brief is the affidavit of James L. Eaton, Assistant Corporations Commissioner and custodian of all annual reports filed by Georgia corporations (as required by Ga.Code Ann. § 22–1501)[3] and all corporate charters filed with the State of Georgia. Mr. Eaton states: "As Assistant Corporations Commissioner for the State of Georgia, I am familiar with the procedures by which information is obtained from the Secretary of State. Numerous employees are assigned to me and respond by telephone to requests by persons for information concerning records maintained in my office with respect to corporations doing business in Georgia. In responding to such requests, including any requests for information as to the principal office of a corporation, the source document used by employees of my office is the Certified Statement for Annual Report of a corporation * * Had requests been made for the principal place of business or the principal office of Carmichael Enterprises, Inc. for the years 1968 and 1969, the information on file in our office would have indicated that the principal office of

the debtor's residence or if the debtor is not a resident of this state then in the office of the . . . . . . . in the county where the goods are kept, and in addition when the collateral is crops in the office of the . . . . . . . in the county where the land on which the crops are growing or to be grown is located;
(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;
(c) in all other cases, in the office of the [Secretary of State].

*"Third Alternative Subsection (1)*

"(1) The proper place to file in order to perfect a security interest is as follows:
(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the . . . . . . . in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the . . . . . . . in the county where the goods are kept, and in addition when the collateral is crops in the office of the . . . . . . . in the county where the land on which the crops are growing or to be grown is located;
(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;
(c) in all other cases, in the office of the [Secretary of State] and in addition, if the debtor has a place of business in only one county of this state, also in the office of . . . . . . . . of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of . . . . . . . of the county in which he resides.

"Note: One of the three alternatives should be selected as subsection (1)."

The reason for providing three alternatives was stated in the Official Comments: "This Section does not attempt to resolve the controversy between the advocates of a completely centralized statewide filing system and those of a large degree of local autonomy. Instead the Section is drafted in a series of alternatives; local considerations of policy will determine the choice to be made."

3. The Code section applicable at the time the financing statements herein were filed was Ga.Code Ann. § 22–1703, which required essentially the same information annually as does the present law.

the corporation was 1831—Highway I–85, Norcross, Georgia,[4] [Gwinnett County] for the aforesaid period of time, and employees of my office would have been authorized to offer such information in response to said inquiry."[5] Thus, a careful lender, aware of the problems involved, and making a diligent search for the principal place of business of the debtor corporation here, nevertheless would have filed in Gwinnett County.

Another factor which the Court deems significant in construing the statutory language is that the "principal place of business" rule is to be applied, by the terms of the statute, when the debtor is a "partnership, a corporation, other business entity not an individual." Partnerships and other business entities, of course, have no charter or certificate of incorporation on file with the Secretary of State. To allow the charter designation to serve as the "principal place of business" for filing purposes would be tantamount to establishing one standard for corporations and another for partnerships and other business entities. There is no indication in the statutory language that a double standard was intended.

On April 1, 1969, the new Georgia Corporations Code became effective and, while the old code was still in effect at the time the parties filed their financing statements here, the Court believes the changes made have a bearing on the issues in the instant case. Among other things, the new corporate code provides that "Each corporation shall have and continuously maintain in this State: (1) A registered office which may be, but need not be, the same as its place of business * * *." Ga.Code Ann. § 22–401. The comments of the drafters of this provision are revealing: "It is not intended that other laws, the application of which now turn upon a determination of the corporation's principal place of business, should be affected by this section. For example, financing statements of a debtor corporation under Ga.Code Ann. § 109A–9–401(1) (b) still would be filed in the county in which the principal place of business is located, not the county of the registered office." The Referee rejected these comments as controlling on the ground that they were "merely the opinion of the drafters attempting to interpret the requirements of a separate and distinct statute which they did not draft, i. e., the filing requirement of the Uniform Commercial Code (Ga.Code Ann. 109–A–9 401(1) (b))." This Court, too, does not consider these comments as controlling or conclusive, but they do provide a source of enlightenment in construing an otherwise maiden statute; and this Court will not completely reject their significance. Even without the comments, however, the changes in the corporate code themselves shed some light on the question of proper filing. As can be seen from the statute, "principal office" is deleted and "registered office" is substituted with the clear mandate that the "registered office" need not be the same as the place of business. The filing rule proposed by the Referee (that the "principal office" as stated in the corporate charter is the equivalent of "principal place of business" for filing purposes) would appear to be inapplicable to corporations created after April 1, 1969. An adoption of the Referee's proposal would result in the

4. The pertinent form has a space for the "Principal Office" in which the bankrupt, in its 1967 return, included the address cited in the affidavit. The form also has a space for the place of incorporation ("Where Incorporated") in which space the bankrupt inserted "Fulton County."

5. An obvious, though necessarily circuitous, retort to the information presented in the affidavit is that each creditor could request the "place of incorporation" from the commissioner's office, instead of the "principal office" or "principal place of business," even though the filing provision uses "principal place of business." It is not the purpose of this discussion however, to delve into the inner workings of the Office of the Secretary of State but, rather, to point out the possible increase in the margin of error which could result from a preliminary central search of the corporate records in the present Georgia filing system based on local filings.

application of different filing standards for pre- and post-1969 corporations. Financing statements for pre-1969 corporations would be filed in the "principal office" as designated in the charter while financing statements for post-1969 corporations apparently would have to be filed in the county of the corporation's factual principal place of business. The Court notes, as did the Referee, that the new corporate code provision was not in effect at the time the financing statements were filed here. The Court deems it pertinent, however, to consider the effect of its decision on the filing issue on all corporations, especially since this is a case of first impression in Georgia. The Court cannot overlook the confusion which might result from the establishment of different filing standards for pre- and post-1969 debtor corporations.

There are other factors from which inferences of legislative intent can be drawn. The statutory provision relative to the formation of corporations, which was in effect at the time of the enactment of the Uniform Commercial Code, speaks in terms of "principal office" (Ga. Code Ann. § 22–1802 [1965]), whereas the Uniform Commercial Code filing provisions of Ga.Code Ann. § 109A–9–401 uses the term "principal place of business." It would seem that, had the Georgia Legislature intended the "principal office" of the corporate charter to govern the filing requirements of the Uniform Commercial Code it would have used the term "principal office" instead of "principal place of business" in Section 109A–9–401.[6] Also, the filing provision does not make specific reference to any other statute for definitional purposes, although the legislature has done so on previous occasions. For example, in Ga.Code Ann. § 109A–1–201(4), the word "branch" [of a bank] is defined to include "branch bank", "bank office" and "bank facility" "*as those terms are*

*defined in Georgia Laws 1960, page 67, section 3*." Section 22–1316 of the new corporate code (Ga.Code Ann. § 22–1316) sets out the venue and service of process procedures for the involuntary dissolution of a corporation. The section requires that the action be brought "in the superior court of the county in which the last known registered office or principal office of the corporation, *as shown by the records of the Secretary of State,* is situated." Ga.Code Ann. § 22–1316. The failure of the legislature, in enacting the filing provision to make specific reference to the "principal office" concept or to Ga.Code Ann. § 22–1802 is at least some indication that the legislature did not intend that the "principal office" of the corporate charter should be equivalent to "principal place of business."

The trustee relies upon the language of Ga.Code Ann. § 22–1802 [1965], in effect at the time the Uniform Commercial Code was adopted. The section deals with the information required to be furnished in the certificate of incorporation: "Principal office. The county in which the *principal office* of the corporation is to be located but with the privilege, if the same be desired, of establishing branch offices and *places of business* elsewhere." [Emphasis supplied.] Although relied upon by the Trustee, the Court believes an analysis of the section supports the position of the petitioner. The phrase "principal office" is used in an entirely different context as is the phrase "place of business." This distinction cannot be overlooked, and it would again appear that, had the legislature intended the place of filing to be the "principal office", it would have used that term. In this regard, another distinction which deserves attention is found in the filing provisions themselves. Ga.Code Ann. § 109A–9–401(3) provides: "A filing which is made in the proper place in this State continues ef-

---

6. The Court notes, however, that the terms "residence", "principal office" and "principal place of business" have been lumped together on occasion by the Georgia courts. *E. g.*, Ace Waterproofing Co. v. Tremco Manufacturing Co., Inc., 116 Ga.App. 226, 156 S.E.2d 398 (1967). For a discussion of this case, and others, see text surrounding note 11, *infra*.

fective even though the debtor's residence *or* place of business *or* the location of the collateral or its use, *whichever controlled the original filing,* is thereafter changed." [Emphasis supplied.] This distinction between "residence" and "place of business" is one from which the same legislative intent can be inferred.

The preceding analysis of the statute has been necessitated by the lack of either clear statutory language or clear legislative intent as to the meaning of "principal place of business." In such circumstances, the Court must look to other sources of enlightenment as to the meaning of the term. Moore v. Robinson, 206 Ga. 27, 40, 55 S.E.2d 711 (1949). Obviously, the factors considered by the Court are, by themselves, not conclusive as to the meaning of the language involved. Taken together, however, the preceding considerations lead the Court to believe that, by using the term "principal place of business" in Section 109A–9–401(1) (b), the legislature intended that the proper place for filing of a financing statement be the *factual* principal place of business of the debtor corporation and not, as the Referee concluded, the "principal office" as designated in the corporation charter. Moreover, the Court believes this ruling is supported by the construction given to filing provisions in other Uniform Commercial Code jurisdictions, a discussion of which decisions follows.[7]

To the Court's knowledge, the most comprehensive analysis of the filing provisions of the Uniform Commercial Code by a federal court is in the case of In re P. S. Products Corp., 7 UCC Reporting Service 411 (E.D.N.Y.1970), aff'd P. S. Products Corp. v. Equilease Corp., 435 F.2d 781 (2d Cir. 1970). This analysis was made in terms of the New York filing statute (§ 9–401) which provides, in pertinent part:

" '(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is \* \* \* [farm goods, equipment, products, etc.], or consumer goods, then in the office of the filing officer in the county of the debtor's residence if the debtor is a resident of this state, and in addition when the collateral is crops \* \* \* [in the county where the crops are located];

(b) when the collateral is goods which \* \* \* are or are to become fixtures \* \* \* [in the real estate recording office in the county where the land is located];

(c) in all other cases, in the department of state and in addition, *if the debtor has a place of business in this state and in only one county of this state,* also in the office of the filing officer of such county;

(d) for the *purposes of paragraph (a)* of this subsection, a foreign corporation which is authorized to do business in this state is deemed a resident of this state and the residence of a debtor which is

(i) a domestic corporation, is the county in which the office of the cor-

---

7. Ga.Code Ann. § 109A–1–102 provides:
   "(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.
   "(2) Underlying purposes and policies of this Act are
     (a) to simplify, clarify and modernize the law governing commercial transactions;
     (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
     (c) to make uniform the law among the various jurisdictions."

The absence of any Georgia decisions on the issue before the Court, coupled with the legislature's express desire for national uniformity in the area of commercial law compels the Court to examine the decisions of other Uniform Commercial Code jurisdictions. Silver v. Gulf City Body & Trailer Works, 432 F.2d 992 (5th Cir. 1970). A procedure out of line with that in other Uniform Commercial Code jurisdictions could trap out-of-state lenders and force them to be wary in making Georgia loans, a result which the legislature obviously wished to avoid.

poration is to be located as specified in its certificate of incorporation or most recently filed certificate of amendment thereto;

(ii) a foreign corporation * * * ;

(iii) a partnership * * *

* * * * * *

" '(3) A filing which is made in the proper place in this state continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed.' (Emphasis added.)" Quoted in *P. S. Products, supra* at 413.

A simple reading of the provision reveals, of course, that New York, as did many states, adopted the *dual* method of filing financing statements. The *P. S. Products* case, therefore, is not a wholly infallible reference in analyzing the Georgia statute, which only provides for local filing. The Court's conclusion as to the meaning of the term "place of business", construed in terms of business realities, however, does merit considerable attention. In *P. S. Products* the petitioner had filed its financing statement with the Secretary of State and in Nassau County, where the "office of the corporation" [P. S. Products] was located, as indicated in the certificate of incorporation. The bankrupt's only commercial and manufacturing activities were conducted in Suffolk County. The Court held that the bankrupt's only place of business (for filing purposes) was in Suffolk County and that petitioner had not met the requirement of filing with the Secretary of State and in Suffolk County pursuant to New York UCC § 9–401(c). Among other factors, the Court considered the case of In re Highland Industries, Inc., 5 UCC Reporting Service 1119 (E.D.N.Y.1968), which decision was relied upon, in part, by the Referee (in

his original decision) and the Trustee in the instant case.[8] The Court in *Highland* held that the "place of business" of a domestic corporation is the principal office as set forth in the certificate of incorporation. In discussing the decision in *Highland,* the District Court in *P. S. Products* stated: " * * * [T]he rule in *Highland Industries* has several drawbacks. First, checking the certificate of incorporation requires a search in a central filing place to begin with, and would thus eliminate any of the benefits intended by § 9–401(1) (c) for local creditors of not having to go to the expense and trouble of central searching of essentially local businesses. Second, the use of certificates of incorporation seems to be artificial, especially if the corporation has moved away from the original location long before * * * Third, since central searching of certificates frequently requires the use of a searching service, without direct control by the Searcher * * * the margin for error may be greater. Additionally, locating the latest certificate and determining the substance and effect of its contents becomes necessary."[9] The foregoing observations, although made in the context of a dual filing system, are equally applicable to the Georgia filing provision.

The emphasis placed upon business realities in *P. S. Products* has been the basis of other decisions involving Uniform Commercial Code filing provisions. In In re McQuaide, 5 UCC Reporting Service 802 (D.Vt.1968), the Referee in Bankruptcy considered the question of whether or not the business activity carried on in the bankrupt's home was a "place of business" under the dual filing provisions of the Vermont Uniform Commercial Code. In reaching his decision, the Referee relied upon the following standard: "[I]t would appear that a

---

8. *Highland Industries* was overruled by the Second Circuit in its decision in *P. S. Products, supra.* The Referee subsequently amended his original order by excluding all reference to and reliance upon the *Highland Industries* case.

9. Other observations on the *Highland* case are made by the Court, but they have relevance primarily with regard to the New York dual filing system.

"place of business" intended within the purview of subsection 9–401(1) (c) is one which has notoriety; a place where customers and creditors of the debtor would normally resort to or communicate with by mail or otherwise to trade with the debtor or engage in commercial transactions; a place where persons dealing with the debtor would normally look for credit information." *Id.* at 806.

The foregoing decisions,[10] while dealing with somewhat different methods of filing, indicate to the Court that in the Uniform Commercial Code jurisdictions in which the question has been considered, the *factual* approach is employed in defining and determining the principal place of business of a debtor corporation. The Court also believes this approach is in keeping with the intention of the drafters of the Uniform Commercial Code: "This policy of the subsection is to require filing in the place or places where a creditor would normally look for information concerning interests created by the debtor." Official Comment 3.

The Referee based his decision on several factors which should be noted here. The Referee relied upon Georgia cases which hold that a corporation's "residence", "place of business" or "principal place of business" is, *for venue purposes,* its principal office as set forth in its corporate charter. Grimaud v. Knox-Georgia Homes, Inc., 210 Ga. 514, 81 S. E.2d 476 (1954); St. Francis Hospital, Inc. v. Dion, 123 Ga.App. 360, 181 S.E. 2d 72 (1971); Ace Waterproofing Co. v. Tremco Manufacturing Co., Inc., *supra* note 6; Mavity v. First of Georgia Insurance Co., 115 Ga.App. 763, 156 S.E. 2d 191 (1967); Singuefield v. General

Oglethorpe Hotel Co., 113 Ga.App. 326, 148 S.E.2d 92 (1966); Hutcheson Mfg. Co. v. Chandler, 29 Ga.App. 726, 116 S.E. 849 (1922). The Court does not consider the "venue" cases as controlling on the question of proper filing of financing statements under the Uniform Commercial Code. In light of the express purposes of the Uniform Commercial Code as stated in Ga.Code Ann. § 109A–1–102 and what this Court has determined to be the legislative intent in enacting Ga. Code Ann. § 109A–9–401(1) (b), there are different considerations involved in construing the filing provisions. Moreover, at least one other court has rejected state "venue" cases as controlling. In In Matter of Bethlehem Concrete Corp., *supra* note 10, the Court stated: "Absent a statutory definition of the term 'place of business' and absent a case directly on point, the petitioner understandably relies upon *wholly dissimilar* cases involving venue and service. They are not authority for the proposition that central filing alone is here sufficient."[11] 306 F.Supp. at 1049 [Emphasis supplied.]

The Referee, and the Trustee, also relied upon the Supreme Court's decision in Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841 (1916). In *Fairbanks* the Court, construing Illinois decisions, held that the proper place to file a chattel mortgage under Illinois law was the county of the principal office as stated in the corporate charter and not in the county where the debtor corporation conducted its business. The Court does not deem the *Fairbanks* case controlling here for several reasons. First, the decision is purely a construction of Illinois chattel mortgage

10. *See also* Tatelbaum v. Commerce Investment Co., 257 Md. 194, 262 A.2d 494 (Md.Ct.App.1970); In Matter of Bethlehem Concrete Corp., 306 F.Supp. 1047 (E.D.Pa.1969); In re Page, 6 UCC Reporting Service 250 (W.D.Ky.1968).

11. While the "venue cases are not controlling, the Court notes the case of Henderson Lumber Co. v. Chatham Bank & Trust Co., 169 Ga. 139, 149 S.E. 885

(1929), in which the Court perfunctorily lumped "principal office", "place of business" and "residence" together for mortgage-filing purposes: "The corporation's principal office or place of business is the residence of the domestic corporation." *Id.* In light of the language and legislative intent of the present filing provisions (Ga.Code Ann. § 109A–9–401(1) (b)), the Court does not consider the *dicta* in this case as controlling.

law as it existed in 1916. As such, the decision necessarily did not take into account the many ramifications of the Uniform Commercial Code. Especially not considered was the legislative intent underlying the peculiar filing provisions of the Georgia Uniform Commercial Code, which, the Court believes, is of paramount significance in the case before the Court. For these reasons the Court does not feel bound by the Supreme Court's decision in *Fairbanks.*

In addition to his reliance upon the reasoning of the Referee, the Trustee has presented three additional cases to the Court. Guterman v. Rice, 121 F.2d 251 (1st Cir. 1941); In re Savage Mills, Inc., 170 F.Supp. 559 (E.D.N.Y.1959); In re Merrymeeting Products Corp., 139 F.Supp. 625 (D.Me.1956). The Court will not accept these decisions as controlling since they are pre-Uniform Commercial Code decisions which construe state chattel mortgage recording statutes, all of which statutes use the term "residence." [12] Although the Trustee, and the Referee, relied on In re Golden Kernel, Inc., 5 UCC Reporting Service 43 (E.D.Pa.1968), the Court believes the *factual* approach used by the court in that case clearly supports the position of petitioner here. In *Golden Kernel,* the Pennsylvania filing provision in question provided for dual filing with the Secretary of State and, if there is only one "place of business", in the county of the "place of business." The Court noted: "It seems difficult to believe, in the absence of express definition, that the drafters of the Code intended the term

["place of business"] to have any other than its ordinary meaning as the term is generally understood. We, therefore, reject the contention made by counsel for the debtor-in-possession that the expression 'place of business' is a term of art as employed in the Code." The Court in *Golden Kernel* clearly applied the factual approach in determining the "place of business" of the debtor corporation and the reliance upon this case by the Trustee and the Referee is misplaced.

From the preceding analysis of the statutory language, legislative intent and decisions in other Uniform Commercial Code jurisdictions, the Court concludes that the proper place to file a financing statement under Ga.Code Ann. § 109A–9–401(1) (b) is the county of the debtor corporation's *factual* principal place of business. It appears to the Court that, since the results of improper filing are as consequential as they are, the purely mechanical procedures required to properly file a financing statement should be clearly articulated.[13] Unfortunately, that is not the case here, and, for that reason as well as the lack of decisive case authority, the decision reached by the Court in the instant case has not been without difficulty and, no doubt, does not answer all questions which may arise. For example, resolution of the question posed by the Referee may be subject to dispute: "Quare: what if a corporation maintains numerous places of business throughout this state in several counties? Adopting the reclaimant's [petitioner's] point of view, would it not be virtually impossible for a creditor to determine

12. Even if the Court did place reliance on these decisions, they would not necessarily be helpful to the Trustee. For example, the Massachusetts recording statute in Guterman v. Rice, *supra,* provided that a chattel mortgage be recorded in "the mortgagor's *residence* and his *principal place of business." Id.* 121 F.2d at 251. [Emphasis supplied.] This distinction seems to negate the Trustee's equation of the two terms.

13. For well defined procedures for filing see § 9–401(1) of the Nebraska Uniform Commercial Code, which, incidentally,

provides: "If the debtor shall be a Nebraska corporation, a foreign corporation qualified to do business in Nebraska or a foreign corporation domesticated under Nebraska law, then it shall be deemed a resident, and its residence for purpose of filing shall be the county where the office of its last appointed resident agent is located. If the debtor is a partnership or other unincorporated entity maintaining a place of business in this state, then the debtor shall be deemed a resident, and its residence for purpose of filing shall be its principal place of business in this state * * *."

which of the debtor's operations is the 'principal place of business' so that the creditor might record its financing statement in the proper county." The Court agrees that such dilemmas may, and undoubtedly will, arise irrespective of the decision herein, and notes that such problems could have been eliminated by adoption of a "dual" method of filing,[14] which procedure was offered as an alternative by the drafters of the Uniform Commercial Code and rejected by the Georgia Legislature. The burden which may be placed upon creditors of multi-county debtors is an inevitable and, the Court believes, foreseeable result of Georgia's purely local filing system. Perhaps such problem will be remedied by appropriate legislation.

### CLAIM OF UNION CAMP

On March 12, 1970, Union Camp Corporation filed a Proof of Claim with the Referee, alleging: "That the corporation does hold a security interest covering present and after-created accounts receivable as of January 24, 1969, file No. 16909, filed with the Clerk of the Superior Court, Gwinnett County, Ga." Attached to the claim were (1) a statement of account, (2) a series of promissory notes, (3) a letter dated December 13, 1968 from Union Camp to the bankrupt and (4) a financing statement filed on January 24, 1969, in Gwinnett County, Georgia. On a motion for summary judgment, the Referee held that there was no security agreement and that the financing statement did not serve as a security agreement.[15] The Referee also noted that, even if a security agreement were found to exist, the financing statement was not properly filed under Ga. Code Ann. § 109A–9–401(1) (b). For

the reasons stated in the Court's discussion of the proper filing place, *supra,* the Court holds that Union Camp complied with the requirements of Ga.Code Ann. § 109A–9–401(1) (b) by filing in Gwinnett County. The only remaining question is whether Union Camp obtained a "security agreement" as that term is used in the Georgia Uniform Commercial Code.

Ga.Code Ann. § 109A–9–203(1) (b) provides that a security interest is unenforceable unless "The debtor has signed a security agreement which contains a description of the collateral * * *." The term "security agreement" is defined as "an agreement which creates or provides for a security interest." Ga.Code Ann. § 109A–9–105 (1) (h). The Code defines "agreement" as "the bargain of the parties in facts as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance * *." Ga.Code Ann. § 109A–1–201(3). Under these provisions, it is clear that Union Camp must meet three requirements: (1) There must be a writing signed by the debtor, (2) the writing must include a "security agreement" as that term is defined, *supra,* and (3) the writing must describe the collateral.

In support of its argument that it had a valid "security agreement", Union Camp first offers a letter, dated December 3, 1968, from its Assistant Credit Manager to Mr. Paul H. Herbert, Vice President of Carmichael Enterprises, Inc. The December 3 letter states, in part: "In accordance with our several phone conversations the following will outline our requirements which will enable us to extend additional time on the

14. See also the procedure established under the Nebraska Uniform Commercial Code. *Id.*

15. Though not attached to Union Camp's Proof of Claim, a letter dated December 3, 1968, from Union Camp to Carmichael was attached to Union Camp's motion for summary judgment before the Referee. Though not specifically mentioned in the Referee's findings of fact and conclusions

of law, the Court finds that the December 3, 1968, letter was considered by the Referee, primarily because of the following language in the Referee's decision: "No security agreement between the bankrupt and Union Camp Corporation appears in the record of this case, either attached to the claim *or to the Motion for Summary Judgment* filed by Union Camp Corporation."

payment of your indebtedness to us. Our arrangement will be formalized by a loan *agreement* containing the following provisions:

 \*   \*   \*   \*   \*   \*

 "5. Execution of a Financing statement in which accounts receivable inventory and proceeds thereof are provided as collateral for the above indebtedness \* \* \* "

On December 13, 1968, a letter and a financing statement were sent by Union Camp to Carmichael Enterprises, Inc. The December 13 letter set forth the terms of the loan agreement and stated, in part:

 "In consideration of our acceptance of your notes to cover your indebtedness to us of $26,150.32, you agree to the following conditions:

 \*   \*   \*   \*   \*   \*

 "2. You shall execute and return the enclosed Financing Statement, form UCC–1, retaining copy four (4)."

The December 13 letter was signed in the following manner:

 "Agreed.
 Carmichael Enterprises, Inc.
 by /s/ Paul H. Herbert
 date /s/ Vice Pres. 1/17/69"

The Financing Statement, enclosed in the letter, was also signed by Paul H. Herbert for Carmichael Enterprises, Inc., in the space for "Signature(s) of Debtor(s)."

Blank No. 5 on the financing statement stated: "This financing statement covers the following types (or items) of property." Inserted in the space provided was "Present and after-created accounts receivable." Union Camp argues that the above documents, taken together, show the existence of a "security agreement" with Carmichael Enterprises, Inc.

■ An analysis of the several decisions which have considered the question makes it clear, the Court believes, that a financing statement alone cannot serve as a "security agreement." *E. g.,* Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland,

380 F.2d 355 (4th Cir. 1967); In re Rand, 6 UCC Reporting Service 1129 (D. Me.1969); In re Center Auto Parts, 6 UCC Reporting Service 398 (C.D.Cal. 1968); Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, 176 N.W.2d 166 (Iowa S.Ct.1970); Rutkin Elec. Supply Co., Inc. v. Burdette Elec., 4 UCC Reporting Service 1074 (N.J.Superior Court 1967). These same authorities, however, recognize that a financing statement attended by other documents or circumstances may suffice as a valid "security agreement."

The decision most clearly analogous is In re Center Auto Parts, *supra.* In *Center Auto Parts,* the existence of a promissory note and a financing statement was held to constitute a "security agreement." The crucial factors relied upon by the Court were the contemporaneous signing of both documents by the debtor and certain language in the promissory note: "This note is secured by a certain financing statement."

In the instant case the December 13 letter indicates the indebtedness of Carmichael to Union Camp and sets out the terms by which the debt is to be repaid. Excepting any reference to the financing statement, the December 13 letter is an "agreement" for repayment of a loan, as the term "agreement" is defined in Ga. Code Ann. § 109A–1–201(3). There are two factors, the Court believes, which converts this "loan agreement" into a "security agreement" as that term is defined in the Code, *supra.* Paragraph two (2) of the December 13 letter provides that one of the terms of the loan agreement is that the debtor execute the financing statement enclosed with the letter. This reference to the financing statement is, of course, not as clear as the language in the promissory note in In re Center Auto Parts, *supra.* The effect, the Court believes, is the same. Execution of the financing statement was a specific term or condition of the loan agreement; and, as a second determining factor, the December 13 letter and the financing statement appear to have been signed contemporaneously by the debtor. The financing statement

does not indicate the exact date it was signed by the debtor as does the December 13 letter (January 17, 1969). It is apparent that the two documents were mailed together, and Union Camp represents, in its brief, that the two documents were "mailed together [and] signed together." There has been no contention or finding to the contrary by the Referee or the Trustee.

Whether or not the documents were signed contemporaneously is an important factor as to the existence of a security agreement. Absent any contention or evidence to the contrary,[16] the Court finds that the two documents were signed contemporaneously.

▮▮ The Court deems the December 13 letter and financing statement, *taken together,* as meeting the requirements for creation of a security agreement:[17] the debtor *signed* a *security agreement* which contains a *description of the collateral.*[18] The Court holds that Union Camp obtained a "security agreement" from the bankrupt and, as the financing statement was properly filed in Gwinnett County, should have been assigned the status of a "secured creditor" of Carmichael Enterprises, Inc.

### CONCLUSION

The Court is well aware that the determination of the proper place for filing financing statements is a question ultimately of state law, even in bankruptcy situations, and that there is a possibility that the Georgia Appellate Courts may subsequently disagree with this decision and that confusion may result.

In view of the above situation, the Court, had the procedure been available, would cheerfully have referred the determination of the crucial state question to the appropriate Georgia Appellate Court. See, for example, § 25.031, Florida Statutes (1959) F.S.A. But that was not possible here.

So, to summarize, this Court holds that Union Camp Corporation obtained a "security agreement" from the bankrupt, Carmichael Enterprises, Inc., and that both Union Camp Corporation and Trust Company of Georgia, by filing their financing statements in Gwinnett County, Georgia, complied with the filing requirements of Ga.Code Ann. § 109A–9–401 (1) (b). The conclusions of law of the Referee are therefore reversed, and the case is remanded to the Referee for disposition not inconsistent with the terms of this order.

16. Any evidence or contention to contradict this finding should be presented to the Court in a motion for reconsideration. Should a factual issue thereupon be created, the Court may remand the case to the Referee for further factual findings.

17. Although not a controlling factor, the December 13 letter may properly be considered as a "circumstance" from which an "agreement" can be inferred. See Ga. Code Ann. § 109A–1–201(3).

18. The description of the collateral contained in the financing statement ("Present and after-acquired accounts receivable") meets the requirements of Ga.Code Ann. § 109A–9–110: "For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."